(No. 58916.—
RUTH ELLIS, Appellant, v. THE BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES, Appellee.

*Opinion filed June 29, 1984.*

UNDERWOOD, J., took no part.
SIMON, J., concurring in part and dissenting in part.

Gilbert A. Cornfield, of Cornfield and Feldman, of Chicago, for appellant.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (Mark T. Dunn, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:
The plaintiff, Ruth Ellis, filed suit against the Board

of Governors of State Colleges and Universities of Illinois (the Board) in the circuit court of Sangamon County. In her complaint, plaintiff alleged that she had been constructively discharged without good cause from her position as a tenured professor at Northeastern Illinois University in violation of section 8(3) of "An Act to provide for the management, operation, control and maintenance of the State Colleges and Universities System" (Ill. Rev. Stat. 1981, ch. 144, par. 1008(3)). In her complaint, plaintiff sought "an award of damages and appropriate injunctive relief for breach of [her] employment rights." Upon the Board's motion, the circuit court dismissed the plaintiff's complaint with prejudice, holding that the Court of Claims had exclusive jurisdiction over the subject matter of the suit. The appellate court, in a Rule 23 order, affirmed the circuit court holding that any remedy available to the plaintiff must be sought in the Court of Claims. (115 Ill. App. 3d 1158.) The plaintiff filed a petition for leave to appeal with this court pursuant to our Rule 315(a) (87 Ill. 2d R. 315(a)), and we granted plaintiff's petition. We now affirm the judgment of the appellate court.

The plaintiff raises two issues on appeal before this court. First, whether the Board is the "State of Illinois" within the meaning of the Court of Claims Act (Ill. Rev. Stat. 1981, ch. 37, par. 439.1 *et seq.*) and therefore must be sued in the Court of Claims and, second, whether her suit is outside the exclusive jurisdiction of the Court of Claims because it is based upon a violation of her statutory rights.

Plaintiff was a tenured professor at Northeastern Illinois University. During the 1974-75 academic school year she was sent to Sweden to participate in an approved educational and research program. While in Sweden, plaintiff became ill and was placed on a medical leave of absence. Plaintiff applied for temporary disability pay-

ments under the State Universities Retirement System on the advice of the University. In order for plaintiff to receive the temporary disability payments, she needed certification of her medical condition by two physicians. The physician for the University refused to certify plaintiff's condition, and the plaintiff alleges the University failed to advise her that two physicians in Sweden could provide the necessary certification. On or about September 14, 1977, plaintiff received a letter from the provost of the University advising her that she could not continue on her leave of absence but must return and resume her responsibilities or be dismissed. Plaintiff responded by requesting an early retirement because she alleges she was not in good enough physical condition to return to work.

Plaintiff alleges that the University forced her into early retirement by refusing to give her temporary disability and that she was constructively dismissed from her tenured position in violation of section 8(3) (Ill. Rev. Stat. 1981, ch. 144, par. 1008(3)), which provides for dismissal only for good cause. Plaintiff believes she should be reinstated to her tenured position and receive money damages for her lost salary or, in the alternative, temporary disability payments from the 1975-76 academic school year until the present.

The plaintiff contends that the doctrine of sovereign immunity does not apply to the Board and that the circuit court therefore has jurisdiction over her claim. In *S. J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397, we stated:

> "In the United States, sovereign immunity has been justified as a rule which embodies a policy that protects the State from interference in its performance of the functions of government and preserves its control over State coffers." 93 Ill. 2d 397, 401, citing Block, *Suits Against Government Officers and the Sovereign Immunity*

*Doctrine,* 59 Harv. L. Rev. 1060, 1061 (1946).

As we also stated in *Groves:*

· "Section 4 of article XIII of the 1970 Constitution abolished sovereign immunity. It provides: 'Except as the General Assembly may provide by law, sovereign immunity in this State is abolished.'

Pursuant to section 4 of article XIII the legislature enacted Public Act 77—1776 (Ill. Rev. Stat. 1979, ch. 127, par. 801), which provides that the State may not be made a defendant or a party in any court except as set forth in the Court of Claims Act (Ill. Rev. Stat. 1979, ch. 37, par. 439.1 *et seq.*). Public Act 77—1776 became effective on January 1, 1972, the same date section 4 of article XIII was to become effective (Ill. Const. 1970, Transition Schedule, sec. 1(e)). As this court said in *Sass v. Kramer* (1978), 72 Ill. 2d 485, the legislature, 'acting under the authority of the 1970 Constitution, specifically prohibited making the State of Illinois a defendant or party in any court.' 72 Ill. 2d 485, 490." *S. J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397, 399.

We will first address plaintiff's assertion that the Board is not the "State of Illinois" for purposes of sovereign immunity. In *Williams v. Medical Center Com.* (1975), 60 Ill. 2d 389, this court held that the Medical Center Commission, a body politic and corporate, was an arm of the State and only subject to suit in the Illinois Court of Claims pursuant to the Court of Claims Act. This court stated:

"Whether the Medical Center Commission is to be regarded as an arm of the State is therefore the first question which we must decide. Both the Medical Center Act and the Court of Claims Act refer to the Medical Center Commission by name, and each directs that actions against the Commission which sound in tort shall be prosecuted in the court of claims. Beyond this legislative characterization there are additional indications that the Commission is in fact an agency of the State. Its personnel must be hired pursuant to the Personnel Code of the State; it is required to submit to the General Assembly

biennial reports of its past operations and its future programs; its contracts must be made in accordance with the Civil Administrative Code which governs State agencies; its procedures and its fiscal affairs are subject to audit by the Department of Finance like other State agencies; it can convey its real estate only with the written consent of the Governor; and the General Assembly regularly appropriates funds for the compensation of its employees and its acquisition and demolition of buildings. (Ill. Rev. Stat. 1973, ch. 91, pars. 126, 128, 129, 129b, 130; Pub. Act 78—1002; Pub. Act 77—1906.) In our opinion the Medical Center Commission is an arm of the State and the immunity granted by the General Assembly was authorized by section 4 of article XIII of the Constitution." 60 Ill. 2d 389, 393-94.

Then, in *Kane v. Board of Governors* (1976), 43 Ill. App. 3d 315, the appellate court, in comparing the Medical Center Commission in *Williams* to the Board of Governors, held:

"The facts of the instant case are similar to those in *Williams* because not only does section 8 of the Court of Claims Act refer to the Board by name (Ill. Rev. Stat. 1973, ch. 37, par. 439.8), but numerous statutory provisions expressly or impliedly characterize the Board as an arm of the State. For instance, the Board is a creation of the General Assembly and is appointed by the Governor with the consent of the Senate. (Sections 1 and 2 of the State Colleges and Universities Act (Ill. Rev. Stat. 1973, ch. 144, pars. 1001-1002).) The Board possesses the power of eminent domain, can be sued only in the Court of Claims and holds all real property 'for the People of the State of Illinois.' (Section 7 of the State Colleges and Universities Act (Ill. Rev. Stat. 1973, ch. 144, par. 1007).) All of the Board's excess revenues are payable to a special fund in the State Treasury and the General Assembly has the power to make appropriations from that fund for the use of the Board. (Section 6a of the State Auditing Act (Ill. Rev. Stat. 1973, ch. 127, par. 142a).) The Board's expenditures are subject to regulation by the department

of General Services and subject to audit by the State Auditor General. (Section 67 of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1973, ch. 127, par. 63b13); section 6 of the State Auditing Act (Ill. Rev. Stat. 1973, ch. 127, par. 142).) Finally employees of the Board are covered by the State University Civil Service System (section 36b of the University Civil Service System Act (Ill. Rev. Stat. 1973, ch. 24½, par. 38b1)), and they are participants in the State Universities Retirement System. Sections 15—106, 15—134 of the Illinois Pension Code (Ill. Rev. Stat. 1973, ch. 108½, pars. 15—106, 15—134).

\* \* \*

We find, therefore, that the Board and University are not autonomous and independent of the State of Illinois. Rather, they are arms of the State whose employees are expressly covered by section 2 of the Workmen's Compensation Act [citation]." 43 Ill. App. 3d 315, 318-19.

We agree with the court in *Kane* that the Board is an arm of the State of Illinois. Plaintiff relies on *People ex rel. Board of Trustees v. Barrett* (1943), 382 Ill. 321, for the proposition that since this court held that the University of Illinois is "no part of the State or State government" (382 Ill. 321, 343), and that the trustees of the university were "not State officers in the sense that the Attorney General is their legal advisor or representative" (382 Ill. 321, 346), that the Board of Governors is also not the "State" for purposes of sovereign immunity. In *Barrett*, however, this court also held that "[n]o suit can be maintained against it [the University of Illinois] which would adversely affect the rights of the State. *Schwing v. Miles*, 367 Ill. 436." (382 Ill. 2d 321, 343.) It is clear then, that the University was cloaked with sovereign immunity to the extent that it was immune from any suit which would subject the State to liability and adversely affect the rights of the State. We do not agree with plaintiff that our holding in *Barrett* is dispositive of the instant case. Instead, we hold that the Board is the State for purposes of sovereign immunity to

the extent that it is immune from any suit which would subject the State to liability and adversely affect the rights of the State.

We next address the plaintiff's second contention that her cause of action is outside the exclusive jurisdiction of the Court of Claims because it is based upon an alleged violation of a statutory right. We do not agree.

Whether an action against the State is within the exclusive jurisdiction of the Court of Claims depends on the issues involved and the type of relief sought. (*Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 37; *Boards of Education v. Cronin* (1977), 54 Ill. App. 3d 584, 586.) Plaintiff asserts that because her cause of action is based on an alleged violation of a statute and because she is asking for injunctive relief (in addition to money damages), her action is not within the exclusive jurisdiction of the Court of Claims but can be brought in the circuit court of Sangamon County.

Under the Court of Claims Act "[t]he court shall have exclusive jurisdiction to hear and determine the following matters:

(a) All claims against the state founded upon any law of the State of Illinois ***.

(b) All claims against the state founded upon any contract entered into with the State of Illinois.
***

(d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against *** the Board of Governors of State Colleges and Universities ***." Ill. Rev. Stat. 1981, ch. 37, pars. 439.8(a), (b), (d).

It is clear that since we have decided that the Board is an arm of the State and must be sued in the Court of Claims, whether the plaintiff's cause of action sounds in tort, or in contract for breach of her employment contract,

or is for a violation of section 8(3), the Court of Claims has exclusive jurisdiction. Section 8(a) states, "All claims against the state founded upon *any law* of the State of Illinois ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 37, par. 439.8(a).) Certainly, section 8(3) is a law of the State of Illinois. Section 8(b) would be applicable if plaintiff's suit were based on a breach of her employment contract. (See *S. J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397.) And under section 8(d), a cause of action against the Board, sounding in tort, would come within the exclusive jurisdiction of the Court of Claims.

Because plaintiff seeks injunctive relief, in addition to money damages, does not mean, as plaintiff asserts, that her suit must be severed into two parts, that portion of the suit for money damages being brought in the Court of Claims and the other portion being brought in the circuit court. As the appellate court correctly noted, *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, stands for the proposition that if a plaintiff is not attempting to enforce a present claim against the State, but rather seeks to enjoin a State officer from taking future actions in excess of his delegated authority, then the immunity prohibition does not pertain. (68 Ill. 2d 540, 548.) However, we agree with the appellate court that the plaintiff's suit in the instant case is clearly based upon a present claim which has the potential to subject the State to liability and thus must be brought in the Court of Claims.

The plaintiff's assertion that this case presents a separation of powers issue is without merit. In *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109, this court rejected the same argument which plaintiff raises herein regarding the separation of powers doctrine. In *Seifert*, this court stated: "We have no doubt that the Court of Claims Act does not violate the separation of powers provision of the Constitution of Illinois." 64 Ill. 2d 109, 122.

For the foregoing reasons, we affirm the judgment of

the appellate court, which affirmed the judgment of the circuit court.

*Judgment affirmed.*

JUSTICE UNDERWOOD took no part in the consideration or decision of this case.

JUSTICE SIMON, concurring in part and dissenting in part:

The plaintiff, Ruth Ellis, asserts that she was discharged without good cause from her tenured position as a professor at Northeastern Illinois University. Ellis filed an action against the Board of Governors of State Colleges and Universities of Illinois alleging that her dismissal violated section 8(3) of "An Act to provide for the management, operation, control and maintenance of the State Colleges and Universities System" (Ill. Rev. Stat. 1981, ch. 144, par. 1008(3)). She seeks "an award of damages *and appropriate injunctive relief for breach of [her] employment rights.*" (Emphasis added.)

The majority correctly holds that Ellis may not bring her claim for money damages in the circuit court, but it erroneously holds that she is also barred from bringing a complaint seeking equitable relief in that court. Ellis' request for reinstatement based on section 8(3) is no different from the action that this court allowed to go forward in the circuit court in *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548. Ellis seeks an injunction forcing the State to continue their employment relationship. "Plaintiff is not attempting to enforce a present claim against the State but, rather, seeks to enjoin the defendant from taking actions in excess of his delegated authority and in violation of plaintiff's protectable legal interests. Such a suit does not contravene the immunity prohibition. *** [Nor does] the Court of Claims [have] exclusive jurisdiction over the subject matter of this action." 68

Ill. 2d 540, 548.

The majority distinguishes *Bio-Medical Laboratories,* finding that Ellis' suit is "clearly based upon a present claim which has the potential to subject the State to liability." (102 Ill. 2d at 395.) While this may describe Ellis' claim for back pay, it certainly does not portray the basis for her claim for reinstatement. The latter claim would be based on proof that although she is ready and able to resume her status as a tenured professor, the Board, contrary to its statutory mandate, continues to prevent her from doing so. Although the Board's decision to terminate her occurred in the past, the relief sought looks to the reestablishment in the future of an employment relationship between the parties.

The Court of Claims only has authority to recommend that the legislature make an appropriation for an award of damages in this case. But damages do not sufficiently recompense the plaintiff for the injury alleged; they do not give her back her professorship. To allow Ellis the opportunity to obtain complete relief I would allow her to maintain her claim for reinstatement in the circuit court.