WESTSHIRE RETIREMENT AND HEALTHCARE CENTER, Plaintiff-Appellant and Cross-Appellee, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellees and Cross-Appellants.

First District (1st Division)   No. 1—93—3885

Opinion filed December 4, 1995.

Vedder, Price, Kaufman & Kammholz, of Chicago (Richard F. Zehnle and Neal A. Crowley, of counsel), for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and James C. O'Connell, James C. Stevens, and James L. Adelman, Special Assistant Attorneys General, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Westshire Retirement and Health Care Center (Westshire) filed a five-count complaint in the circuit court of Cook County against defendants Illinois Department of Public Aid (IDPA) and IDPA Director Philip C. Bradley, challenging the validity and legality of a Medicaid reimbursement regulation promulgated by IDPA in 1985 (the 1985 regulation). On cross-motions for summary judgment, the circuit court held that the 1985 regulation was arbitrary and capricious and violated Illinois statutory law. The circuit court later ruled that plaintiff had failed to prove any damages. The trial court denied plaintiff's motions to amend its complaint and for rehearing. Plaintiff and defendants now appeal.

A BRIEF HISTORY OF THE STATUTES AND REGULATIONS INVOLVED

Nursing-home care for needy residents of the State of Illinois is provided through Medicaid, which is a cooperative State and Federal program in which the State is partially reimbursed by the Federal government. The program is authorized under the Social Security Act (42 U.S.C. § 1396 *et seq.* (1988)) and implemented in accordance with Federal regulations. A State becomes eligible for Federal Medicaid funds by having a State Medicaid plan that conforms to Federal law approved by the Secretary of the Department of Health and Human Services.

Illinois' participation in the Medicaid program is governed by article V of the Illinois Public Aid Code (305 ILCS 5/5—1 *et seq.* (West 1992) (the Medical Assistance Act)) and implementing regulations promulgated by the IDPA (89 Ill. Adm. Code § 140.500 *et seq.* (1991)). The implementing regulations establish a method for calculating a nursing home's reimbursement rate based on three components. The first component is the capital rate, which applies to ownership and rental costs for buildings and equipment. The second component is the support rate, which applies to costs including food, maintenance, utilities, insurance and office expenses. The third component is the nursing rate, which applies to direct resident-care costs, staff salaries, consultant fees, therapy fees and nursing supply costs. These three components are calculated separately and then combined into an overall *per diem* rate paid by IDPA for each day of nursing-home care provided to each qualified resident. It should be noted that the rate for a fiscal year is based on the calendar year that commenced 18 months earlier; for example, costs for calendar year 1985 form the basis for rates in fiscal year 1988, which covers the period from July 1, 1987, through June 30, 1988.

This appeal concerns IDPA regulations relating to the capital rate reimbursement. Prior to June 1985, the regulations provided that the value of fixed assets was calculated by taking a base cost of a facility and adjusting it to account for inflation and accumulated depreciation. These capital items were then to be converted to a *per diem* rate. Regarding the base cost of a facility, the regulations provided that a sale or lease of the facility occurring after 1977 would not result in a revaluation of the original acquisition or construction cost of the facility. See 89 Ill. Adm. Code §§ 140.563, 140.570 through 140.572 (1991).

Congress enacted the Deficit Reduction Act of 1984 (DEFRA), Public Law 98—369, on July 18, 1984. Various provisions of DEFRA amended Federal law governing both the Medicare and Medicaid programs. One amendment of the *Medicaid* law provided

"that the State shall provide assurances satisfactory to the Secretary [of HHS] that the payment methodology utilized by the State for payments to hospitals, skilled nursing facilities, and intermediate care facilities can reasonably be expected not to increase such payments, solely as a result of a change of ownership, in excess of the increase which would result from the application of [42 U.S.C. § 1395x(v)(1)(O) (1984)]." (See 42 U.S.C. § 1396(a)(13)(B) (1984).)

DEFRA added 42 U.S.C. § 1395x(v)(1)(O) (1984) as an amendment to the *Medicare* law that provided in part as follows:

"In establishing an appropriate allowance for depreciation and for interest on capital indebtedness and (if applicable) a return on equity capital with respect to an asset of a hospital or skilled nursing facility which has undergone a change of ownership, such regulations shall provide that the valuation of the asset after such change of ownership shall be the lesser of the allowable acquisition cost of such asset to the owner of record as of July 18, 1984 *** or the acquisition cost of such asset to the new owner." (42 U.S.C. § 1395x(v)(1)(O)(i) (1984).)

Congress later amended 42 U.S.C. § 1396(a)(13)(B) (1984) to exclude skilled nursing facilities from that section's requirements. (See 42 U.S.C. § 1396(a)(13)(B) (1986).) However, Federal regulations permitted State Medicaid programs to continue to reimburse nursing facilities consistent with the DEFRA version of the statute. See 52 Fed. Reg. 39,928 (1987).

In June 1985, the IDPA published a proposed amendment to the capital cost reimbursement methodology in the Illinois Register. The proposed amendment adopted the above-quoted "lesser of" methodology of DEFRA as codified at 42 U.S.C. § 1395x(v)(1)(O)(i) (1984). The proposed amendment became effective as of December 2, 1985. See 89 Ill. Adm. Code § 140.571(e) (1991).

In 1986, the Illinois General Assembly passed Public Act 84—1321, which amended the Illinois Medical Assistance Act to bar the IDPA from using any depreciation factor in calculating capital cost reimbursement. (See 305 ILCS 5/5—5.5(b)(1) (West 1992).) As noted above, the IDPA did use such a factor at the time. Accordingly, in 1987, the IDPA proposed amendments to the Illinois Administrative Code regarding the calculation of capital cost reimbursement. The 1987 amendments, which became effective on July 1, 1987, removed not only section 140.571(a), regarding the depreciation factor, but also section 140.571(e), which contained the "lesser of" methodology for calculating capital costs. However, similar "lesser of" language was added in regulations specifically addressing the calculation of the building cost of a facility. (See 89 Ill. Adm. Code

§§ 140.570(b)(4)(B), 140.573(b) (1991).) The "lesser of" language of the 1987 amendments was subsequently removed by the IDPA effective July 1, 1991.

### THE WESTSHIRE LITIGATION

On July 30, 1990, plaintiff filed its five-count complaint in the circuit court. This complaint named the IDPA and Kathleen B. Kustra, who was then the Director of the IDPA, as defendants. Defendant Philip Bradley is the successor to Ms. Kustra as Director of the IDPA.

The complaint alleged that Westshire was purchased on October 1, 1985, and claims that the application of the 1985 amendments results in a reduction of its base capital cost from approximately $10 million to approximately $5 million. Count I of the complaint alleged that the defendants failed to comply with Federal procedures in their adoption of the 1985 amendments. Count II of the complaint alleged that the 1985 amendments should be invalidated as arbitrary, unreasonable and capricious. Count III alleged that the 1985 amendments violated part of our State Medical Assistance Act, which provides in relevant part that IDPA

"shall not make any alterations of regulations which would reduce any component of the Medicaid rate to a level below what that component would have been utilizing in the rate effective on July 1, 1984." (See 305 ILCS 5/5—5.4 (West 1992).)

Count IV alleged that defendants were estopped by an agreement with plaintiff from basing the capital cost reimbursement on the cost of any purchase after 1977. Count V alleged that the 1985 amendments constituted an unreasonable restraint of plaintiff's property.

Each count of the complaint sought declaratory, injunctive and monetary relief covering fiscal years 1988-91. The prayer for relief is largely similar on each count. For example, in count II:

"Westshire prays that this Court:

(A) Declare that the 1985 Amendment is arbitrary, unreasonable and capricious;

(B) Enjoin Defendants Illinois Department of Public Aid and Kathleen B. Kustra from applying the 1985 Amendment in the formulation of Westshire's Medicaid reimbursement rates;

(C) Award Westshire as damages an amount equal to the difference between the reimbursement it has received from the State under the Illinois Medical Assistance Program, and the amount it would have received under the pre-1985 methodology; and

(D) Provide such other, further or different relief as the Court deems reasonable, just and proper."

On December 27, 1991, plaintiff filed a motion for summary judg-

ment on counts II and III. On June 29, 1992, defendants filed a cross-motion for summary judgment on counts II, III, IV and V. These motions were fully briefed. Oral argument was held on March 9, April 23, and May 26, 1993. On August 18, 1993, the trial court entered two orders. The first order granted summary judgment to Westshire on counts II and III and to defendants on counts IV and V. The second set a schedule for filing memoranda on the issue of damages.

Plaintiff filed a "Statement of Damages," later amended, claiming that it was underpaid by a total of $746,441 for the relevant fiscal years. Plaintiff also sought prejudgment interest and attorney fees at this time. Defendants filed a response which claimed that using the pre-1985 methodology would show that plaintiff was overpaid by a total of $223,685.94 for the relevant fiscal years. Defendants further argued that plaintiff was not entitled to prejudgment interest or attorney fees.

On October 14, 1993, the trial court entered an order granting Westshire declaratory relief on counts II and III, but ruling that Westshire had failed to prove monetary damages. The trial court also found no just reason to delay enforcement or appeal of the order. Plaintiff's motion for rehearing and plaintiff's motion to amend the complaint were denied on November 3, 1993. Plaintiff filed a timely notice of appeal; defendants cross-appealed.

## I

As always, it is the duty of this court to consider jurisdictional questions before reaching the merits of the appeal. Thus, this court will first consider the defendants' argument that the circuit court lacked subject matter jurisdiction over the claims at issue on appeal due to sovereign immunity considerations.

■ Sovereign immunity exists in Illinois pursuant to statute and mandates that the State or a department of the State cannot be a defendant in an action brought directly in the circuit court. (705 ILCS 505/1 *et seq.* (West 1992); *Smith v. Jones* (1986), 113 Ill. 2d 126, 132, 497 N.E.2d 738, 740.) The prohibition "against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." (*Sass v. Kramer* (1978), 72 Ill. 2d 485, 491, 381 N.E.2d 975, 977.) Therefore, the determination of whether an action is against the State "does not depend on the identity of the formal parties, but rather on the issues raised and the relief sought." *Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 186, 470 N.E.2d 1029, 1038.

■ As to the issues raised, it is presumed that the State or a department of the State does not violate the laws or constitution of the State and that, if such a violation does occur, it is solely an action of the servant or agent of the State. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 124, 384 N.E.2d 310, 313.) Accordingly, "[w]hile legal official acts of State officers are in effect acts of the State itself, illegal acts performed by the officers are not, and when a State officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have, a suit may be maintained against the officer and is not an action against the State of Illinois." *Sass*, 72 Ill. 2d at 492, 381 N.E.2d at 977.

■ In addition, however, a court must consider the relief sought. If a judgment for plaintiff could operate to control the actions of the State or subject it to liability, the action is effectively against the State and is barred by sovereign immunity. (*Currie v. Lao* (1992), 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980.) Thus, in *Ellis v. Board of Governors of State Colleges & Universities* (1984), 102 Ill. 2d 387, 466 N.E.2d 202, our supreme court reasoned that, since section 8(a) of the Court of Claims Act grants exclusive jurisdiction to the Court of Claims for "[a]ll claims against the state founded upon any law of the State of Illinois" (705 ILCS 505/8(a) (West 1992)), an alleged violation of a statute by a State officer does not, by itself, preclude the application of sovereign immunity. (See *Ellis*, 102 Ill. 2d at 394-95, 466 N.E.2d at 206.) The *Ellis* court ruled that sovereign immunity applied, *despite the claim that a statute was violated,* because a judgment for the plaintiff would have subjected the State to direct liability to plaintiff for money damages. (See *Ellis*, 102 Ill. 2d at 395, 466 N.E.2d at 206.) Indeed, the *Ellis* court found this factor to be controlling, despite the fact that the plaintiff sought injunctive relief in addition to money damages. *Ellis*, 102 Ill. 2d at 394-95, 466 N.E.2d at 206. See also *Brucato v. Edgar* (1984), 128 Ill. App. 3d 260, 267-68, 470 N.E.2d 615, 620-21 (prayer for relief, though framed in equitable terms, was essentially claim for damages within the jurisdiction of the Court of Claims); *Liebman v. Board of Governors of State Colleges & Universities* (1979), 79 Ill. App. 3d 89, 93, 398 N.E.2d 305, 308 (request for injunctive relief did not alter basic nature of complaint; Court of Claims had exclusive jurisdiction).

*Senn Park,* upon which plaintiff heavily relies, must be viewed in light of these precedents. *Senn Park,* unlike *Ellis* and the present case, did not involve a present claim for damages. Instead, *Senn Park* was a case in which the plaintiff sought a writ of *mandamus* to compel a public official to authorize Medicaid reimbursement according to statutory provisions. The court stated that "an action to compel

a public official to perform a clear and mandatory duty is not a suit against the State." *Senn Park*, 104 Ill. 2d at 189, 470 N.E.2d at 1039; see also *Allphin*, 74 Ill. 2d at 124, 384 N.E.2d at 312-13 (declaratory judgment suit to compel an official to comply with established valid procedure).

■ The distinction between a suit to compel future action and a present claim for damages was articulated by the *Senn Park* court when it quoted *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223, in which plaintiff challenged the defendant's authority to suspend plaintiff from the Medicaid program:

" 'Plaintiff is not attempting to enforce a present claim against the State, but rather, seeks to enjoin the defendant from taking actions in excess of his delegated authority and in violation of plaintiff's protectable legal interests. Such a suit does not contravene the immunity prohibition.' " (*Senn Park*, 104 Ill. 2d at 188-89, 470 N.E.2d at 1039, quoting *Bio-Medical Laboratories, Inc.*, 68 Ill. 2d at 548, 370 N.E.2d at 227.)

The *Senn Park* court again quoted *Bio-Medical Laboratories, Inc.* in noting that " '[a]ny subsequent action against the State by the plaintiff for damages resulting from an unlawful suspension would certainly raise issues of governmental immunity.' " *Senn Park*, 104 Ill. 2d at 189, 470 N.E.2d at 1039, quoting *Bio-Medical Laboratories, Inc.*, 68 Ill. 2d at 549, 370 N.E.2d at 227.

■ Given these precedents, we must determine whether the circuit court could exercise jurisdiction over the claims on appeal. Although the formal designation of parties in a complaint is not controlling, the rationale for this rule is that a plaintiff may seek to portray an action against the State as an action against an individual officer. (*Sass*, 72 Ill. 2d at 491, 381 N.E.2d at 977.) The complaint in this case, unlike the complaints in *Senn Park*, names the IDPA as well as the Director of the IDPA as defendants. Indeed, the prayer for relief quoted above requests injunctive relief against the IDPA itself.

"Of course, because of sovereign immunity the State *or a department of the State* can never be a proper party defendant in an action brought directly in the circuit court." (Emphasis added.) (*Smith*, 113 Ill. 2d at 132, 497 N.E.2d at 740.)

Thus, the circuit court could not exercise jurisdiction over the IDPA in this case. Of course, the attempt to enjoin an entire department of the State evinces an intent to control the actions of the State. (See, e.g., *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 36-37, 101 N.E.2d 71, 72; *G.H. Sternberg & Co. v. Bond* (1975), 30 Ill.

App. 3d 874, 877, 333 N.E.2d 261, 264.) In addition, the record does not indicate that Mr. Bradley was ever formally substituted for Ms. Kustra as a defendant. Furthermore, plaintiff freely admits that it expects to be paid from State funds, thereby subjecting the State to liability. These actions, taken together, clearly indicate the identities of the nominal defendant and the actual defendant.

Moreover, in *Senn Park*, the nursing home filed two complaints seeking a writ of *mandamus* regarding a rule and a declaratory judgment regarding an emergency rule promulgated by the IDPA. (See *Senn Park*, 104 Ill. 2d at 174-75, 470 N.E.2d at 1032.) In contrast, plaintiff here failed to seek a writ of *mandamus*. Instead, as quoted earlier in this opinion, plaintiff's complaint sought money damages outright; plaintiff ultimately sought $746,441 in damages. Indeed, the plaintiff also sought prejudgment interest and attorney fees. The complaint further prayed for declaratory and injunctive relief, but this is not substantially distinguishable from the prayers for relief at issue in *Ellis*, *Brucato* or *Liebman*.

This court cannot liberally construe plaintiff's complaint as seeking a writ of *mandamus*. A writ of *mandamus* is an extraordinary remedy, but it is governed by the rules of pleading that apply to other actions at law. (*Dennis E. v. O'Malley* (1993), 256 Ill. App. 3d 334, 340, 628 N.E.2d 362, 367.) Illinois has long required that a party seeking *mandamus* show every material fact necessary to establish a clear and undoubted right to the relief sought and a corresponding duty on the part of the defendant or respondent to perform the act demanded. See *Senn Park*, 104 Ill. 2d at 182, 470 N.E.2d at 1036, quoting *People ex rel. Callahan v. Whealan* (1934), 356 Ill. 328, 334, 190 N.E. 698, 701.

In this case, plaintiff's complaint does not allege that Westshire has a clear and undoubted right to the damages it seeks. Nor does the record on its face establish such a right.[1] Where the plaintiff has failed to point to a clear and undoubted right to benefits, the case

---

[1]Section 11—13 of the Public Aid Code provides in part as follows:

"A vendor payment, as defined in Section 2—5 of Article II, shall constitute payment in full for the goods or services covered thereby. Acceptance of the payment by or in behalf of the vendor shall bar him from obtaining, or attempting to obtain, additional payment therefor from the recipient or any other person." (Ill. Rev. Stat. 1989, ch. 23, par. 11—13 (now 305 ILCS 5/11—13 (West 1992)).)

Medicaid payments appear to be "vendor payments" as defined in section 2—5 of the Public Aid Code. (See Ill. Rev. Stat. 1989, ch. 23, pars. 2—5, 2—6 (now 305 ILCS 5/2—5, 2—6 (West 1992)).) Although the IDPA raised a different portion of section 11—13 in the trial court, it was not the stated basis for

falls outside the scope of the *Senn Park* decision. See *Smith*, 113 Ill. 2d at 133, 497 N.E.2d at 741.

It is the duty of this court to follow the decisions of our supreme court. (*People v. Loferski* (1992), 235 Ill. App. 3d 675, 690, 601 N.E.2d 1135, 1145.) Cases such as *Ellis, Bio-Medical Laboratories, Inc.*, and *Smith* demonstrate that a plaintiff generally cannot sue the State for money damages outside the Court of Claims, even though the plaintiff may also seek declaratory or injunctive relief. The *Senn Park* decision stands for the proposition that a writ of *mandamus* may be pursued in the circuit court against a State officer, despite the fact *mandamus* relief may encompass monetary relief. In this case, where the plaintiff has named a State agency as well as a State officer as defendants and has failed to seek a writ of *mandamus* against the relevant State officer, we must conclude that the circuit court lacked jurisdiction over the claims before this court and the trial court's rulings on counts II and III of the complaint must be reversed.

## II

■ Plaintiff also contends that it should have been granted leave to amend its complaint. On appeal, this court determines only whether the circuit court abused its discretion in denying leave to amend. (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-16.) This determination requires us to evaluate the following four factors: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. *Loyola Academy*, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16.

■ In this case, Westshire's proposed amendment went only to the issue of identifying the regulations it sought to challenge, not to the jurisdictional question decided above. This is understandable, as the trial court had previously ruled that the claims were not barred by sovereign immunity. However, it must be noted that plaintiff did not seek leave to dismiss the IDPA as a named defendant or to otherwise amend the complaint to seek a writ of *mandamus* when

---

the trial court's ruling on counts II and III of the complaint. The disposition of this case on jurisdictional grounds obviates the need for any discussion of section 11—13, aside from the observation that if this court read plaintiff's complaint as seeking a writ of *mandamus*, additional briefs might have been requested on the issue.

524

the defendants first raised these issues in the trial court. Instead, plaintiff chose to stand on its complaint and argue that *Senn Park* was nevertheless controlling. Given the record on appeal, we conclude that the ends of justice would not be furthered by granting leave to amend.

Given the disposition of this appeal, we need not consider plaintiff's remaining arguments or defendants' remaining arguments on cross-appeal.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County on counts II and III of plaintiff's complaint is reversed. The case is remanded to the circuit court for further proceedings consistent with this opinion and with directions to dismiss counts II and III of plaintiff's complaint for lack of jurisdiction.

Reversed and remanded for further proceedings.

BUCKLEY and BRADEN, JJ., concur.