2025 IL 130288

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 130288)

REUBEN D. WALKER *et al*., Appellees, v.
ANDREA LYNN CHASTEEN (The People of the State of
Illinois *ex rel.* Kwame Raoul, Attorney General of Illinois, *et al*., Appellants).

*Opinion filed January 24, 2025.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

Justice Neville took no part in the decision.

**OPINION**

¶ 1 Plaintiffs are a class of individuals who filed mortgage foreclosure complaints in the circuit courts and paid "add-on" filing fees mandated by section 15-1504.1 of the Code of Civil Procedure (Code) (735 ILCS 5/15-1504.1 (West 2012)).

Defendants are Illinois circuit court clerks who imposed the fees in accordance with the statute.

¶ 2        Plaintiffs filed a class-action complaint asserting, *inter alia*, that defendants must be permanently enjoined from enforcing section 15-1504.1 of the Code because it is unconstitutional on its face. This court agreed and declared that section 15-1504.1 and two other statutes that created programs funded by the filing fees (see 20 ILCS 3805/7.30, 7.31 (West 2012)) violated the free access clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 12). *Walker v. Chasteen*, 2021 IL 126086, ¶ 47 (*Walker II*). We affirmed the injunction entered by the Will County circuit court against defendants and remanded the cause for further proceedings. *Id.* ¶ 51.

¶ 3        On remand, plaintiffs pursued their sole pending claim, which was for a return of the unconstitutional fees. The circuit court dismissed the refund claim, concluding that it was a claim against the State and thus barred by the doctrine of sovereign immunity. The appellate court reversed the dismissal, holding that the circuit court has jurisdiction to order the refunds under the officer-suit exception to sovereign immunity. We granted defendants leave to appeal.

¶ 4        We hold that the officer-suit exception initially gave the circuit court jurisdiction to enjoin the prospective enforcement of the fee statute as facially unconstitutional. But once the courts declared the fee statute unconstitutional and enjoined its enforcement, plaintiffs' claim for a monetary award to redress a past wrong was the type of claim that is the province of the Court of Claims, not the circuit court. Because the officer-suit exception does not apply to the refund claim, we reverse the appellate court's judgment and affirm the circuit court's judgment of dismissal.

¶ 5                                    I. BACKGROUND

¶ 6        This case has a long procedural history that began with two underlying residential mortgage foreclosure lawsuits. In April 2012, plaintiff Reuben D. Walker filed a mortgage foreclosure complaint in Will County. In August 2015, plaintiff M. Steven Diamond filed a mortgage foreclosure complaint in Cook County.

¶ 7    Section 15-1504.1 of the Code created a $50 "add-on" filing fee for residential mortgage foreclosure actions like those filed by Walker and Diamond. 735 ILCS 5/15-1504.1 (West 2012). Sections 7.30 and 7.31 of the Illinois Housing Development Act (Act) created social welfare programs funded by the fee created in section 15-1504.1. 20 ILCS 3805/7.30, 7.31 (West 2012). Walker and Diamond each paid the $50 add-on fee.[1]

¶ 8    In October 2012, Walker filed a putative class-action complaint against the clerk of the Will County circuit court, alleging, *inter alia*, that section 15-1504.1 was facially unconstitutional. The circuit court certified the class, which included Walker and all individuals who had paid the $50 filing fee up to the time Walker filed his foreclosure action. The court also certified a class of defendants that consisted of all the circuit court clerks in Illinois in their official capacities. The State, through the attorney general, was allowed to intervene.

¶ 9    In November 2013, the circuit court granted plaintiffs partial summary judgment, finding section 15-1504.1 to be facially unconstitutional. The court determined that (1) the circuit court clerks fell within the "fee officer" prohibition in article VI, section 14, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 14) and (2) the provision in section 15-1504.1 that authorized circuit court clerks to retain 2% of the $50 filing fees for administrative expenses created an unconstitutional fee office. This court reversed the judgment and remanded the class action for further proceedings without addressing plaintiffs' other constitutional claims. *Walker v. McGuire*, 2015 IL 117138, ¶¶ 30, 44 (*Walker I*).

¶ 10    Diamond was added as a named party, and in April 2018, plaintiffs filed a second-amended complaint for a permanent injunction prohibiting enforcement of the statutes and for the return of the unconstitutional filing fees. More specifically, count I alleged section 15-1504.1 of the Code and sections 7.30 and 7.31 of the Act violated separation-of-powers principles. Count II alleged the statutes violated equal protection, due process, and uniformity-of-burden principles. Count III alleged the statutes violated the free access clause by providing for the imposition

---

[1]Plaintiffs conceded at oral argument in this appeal that the State currently holds almost all the fees that defendants collected under section 15-1504.1, except for a very small percentage retained by defendants under the statute to cover the circuit courts' administrative costs.

of a filing fee for a purpose that was not court related. Count IV requested the creation of a protest fund for all fees collected or to be collected pursuant to section 15-1504.1 until the conclusion of plaintiffs' action. Counts I, II, and III requested the same relief: (1) a declaratory judgment that the statutes were unconstitutional; (2) "[a] declaratory judgment that any expenditures of State funds collected pursuant to this statute must be returned to Plaintiffs"; (3) temporary, preliminary, and permanent injunctions "enjoining Defendants from disbursing fees collected pursuant to [section 15-1504.1]"; and (4) "[a]n order to return all fees collected pursuant to [section 15-1504.1] to Plaintiffs." Defendants responded that the statutes were constitutional.

¶ 11     The circuit court granted plaintiffs partial summary judgment and declared the three statutes unconstitutional. However, the court granted defendants summary judgment on count IV on the grounds that the creation of a protest fund is not an independent cause of action. The court entered a permanent injunction that prohibited the future collection of the fees and the funding of the social welfare programs, but the court stayed the injunction so this court could review the matter.

¶ 12     This court, in turn, held that plaintiffs paid the filing fees under duress such that the voluntary payment doctrine did not bar plaintiffs' cause of action. *Walker II*, 2021 IL 126086, ¶ 28. This court further held that section 15-1504.1 of the Code and sections 7.30 and 7.31 of the Act violated the free access clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 12). *Walker II*, 2021 IL 126086, ¶¶ 47-48. We affirmed the judgment of the Will County circuit court and remanded the cause for "further proceedings consistent with [the] opinion." *Id. ¶* 51. The proceedings on remand are the subject of this appeal.

¶ 13     On remand, plaintiffs pursued their sole pending claim for a refund of the unconstitutional fees. Defendants responded that the State Lawsuit Immunity Act (Immunity Act) divested the circuit court of subject-matter jurisdiction to grant plaintiffs monetary relief from the State. See 745 ILCS 5/1 (West 2020). The circuit court agreed and granted defendants' motion to dismiss under section 2-619(a) of the Code. 735 ILCS 5/2-619(a) (West 2020). The court concluded that, because the refund claim was an attempt to recover money from the State, the claim must be brought in the Court of Claims. Plaintiffs appealed.

¶ 14　　The appellate court reversed the dismissal and remanded the cause again, holding that (1) the Court of Claims would lack jurisdiction over the refund claim because it could not decide constitutional matters or grant equitable relief and (2) the refund claim fell within the officer-suit exception to sovereign immunity because the complaint had sought restitution, not damages, as well as an injunction. 2023 IL App (3d) 220387, ¶¶ 19, 25. We allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 15　　　　　　　　　　　　　II. ANALYSIS

¶ 16　　Defendants contend the Will County circuit court correctly dismissed plaintiffs' refund claim pursuant to section 2-619(a) of the Code. "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). When ruling on a motion filed under section 2-619, a court must construe all pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* at 367-68. When a defendant claims that sovereign immunity divests the circuit court of jurisdiction, section 2-619(a)(1) prescribes a motion to dismiss that alleges "the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction." 735 ILCS 5/2-619(a)(1) (West 2020); see *Parmar v. Madigan*, 2018 IL 122265, ¶ 9; *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 41. Because a motion to dismiss and questions related to the circuit court's subject-matter jurisdiction present issues of law, our review proceeds *de novo*. *Parmar*, 2018 IL 122265, ¶ 17.

¶ 17　　　　　　　　　　　A. Sovereign Immunity

¶ 18　　Defendants' jurisdictional challenge is premised on principles of sovereign immunity. The Illinois Constitution of 1970 abolished sovereign immunity in this state "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. The General Assembly then enacted the Immunity Act, reinstituting the doctrine of sovereign immunity. The Immunity Act provides in relevant part, "Except as provided in *** the Court of Claims Act ***, the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2022).

¶ 19    The Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2022)), in turn, creates a forum for actions against the State. *Parmar*, 2018 IL 122265, ¶ 20. With certain exceptions not relevant here, the Court of Claims "shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the State founded upon any law of the State of Illinois." 705 ILCS 505/8(a) (West 2022). The Court of Claims is not a court within the meaning of the judicial article of our state constitution. See Ill. Const. 1970, art. VI. Rather, the General Assembly established the Court of Claims to receive and resolve claims against the State. *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 97 (2001).

¶ 20    Plaintiffs' complaint does not purport to assert a claim against the State as such. Rather, they filed their complaint against Andrea Lynn Chasteen in her official capacity as the clerk of the Will County circuit court and as a representative of all clerks of the circuit courts of all counties within the state. As the complaint states that each defendant is sued in his or her "official capacity," the suit is against each official's office and is the same as a suit against the State. *Parmar*, 2018 IL 122265, ¶ 21; see *Drury v. County of McLean*, 89 Ill. 2d 417, 424 (1982) (clerks of circuit courts are not county officials but are nonjudicial members of the judicial branch of state government). Thus, sovereign immunity would appear to bar the entire class action from the circuit court.

¶ 21    However, in determining whether sovereign immunity applies to a particular action, substance takes precedence over form, and a plaintiff may obtain relief in the circuit court even when the named defendant is a state board, agency, or department. *Leetaru*, 2015 IL 117485, ¶ 44. This court has held consistently that deciding whether an action is one against the State depends on the issues involved and the relief sought and not simply the formal identification of the parties. *Parmar*, 2018 IL 122265, ¶ 22; *Leetaru*, 2015 IL 117485, ¶¶ 44-45; *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990). Where, for example, a plaintiff alleges that the State officer's conduct violates statutory or constitutional law or exceeds his or her authority, such conduct is not regarded as the conduct of the State. The underlying principle is that conduct taken by a State officer without legal authority strips the officer of his or her official status. *Parmar*, 2018 IL 122265, ¶ 22 (citing *Leetaru*, 2015 IL 117485, ¶¶ 45-46).

¶ 22 Of course, not every legal wrong committed by an officer of the State will trigger this exception. For example, where the challenged conduct amounts to simple breach of contract and nothing more, the exception does not apply. *Leetaru*, 2015 IL 117485, ¶ 47. The exception is aimed at situations where the official is not doing the business that the sovereign has empowered him or her to do or is doing it in a way that the law forbids. *Id.* The purpose of the doctrine of sovereign immunity, after all, is to protect the State from interference in its performance of government functions and preserve its control over State coffers. *Id.* The State cannot justifiably claim interference with its functions when the act complained of is unauthorized or illegal. *Id.*

¶ 23 Thus, a complaint seeking to prospectively enjoin unlawful conduct may be brought in the circuit court without offending sovereign immunity principles. *Id.* ¶ 48; see *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 261 (2005) (when a State officer's conduct violates the constitution, he may be " 'restrained by proper action instituted by a citizen' " (quoting *Schwing v. Miles*, 367 Ill. 436, 442 (1937))).

¶ 24 This exception to sovereign immunity is often referred to as the "officer suit exception." *Parmar*, 2018 IL 122265, ¶ 22; see *PHL, Inc.*, 216 Ill. 2d at 261 (when a State officer undertakes an action without legal authority, the action strips the State officer of his official status, and his conduct is not that of the State, nor is the action against him considered an action against the State, so sovereign immunity does not bar an action in the circuit court). The exception has also been called the "prospective injunctive relief exception." *C.J. v. Department of Human Services*, 331 Ill. App. 3d 871, 876 (2002). This moniker captures the essential element of the exception: forward-looking relief. See *Green v. State*, 2023 IL App (1st) 220245, ¶ 22. The Appellate Court, First District, has described the exception this way: "Where the plaintiff is not attempting to enforce a present claim against the State but rather seeks to enjoin the defendant from taking actions in excess of his delegated authority, and in violation of the plaintiff's protectable legal interests, the suit does not contravene the immunity prohibition." *Grey v. Hasbrouck*, 2015 IL App (1st) 130267, ¶ 25.

¶ 25 In this action, the complaint contained claims for both (1) prospective injunctive relief to enjoin defendants from enforcing unconstitutional statutes *and*

(2) a present claim for refunds of the unconstitutional fees. Plaintiffs argue the officer-suit exception applies to both claims, such that sovereign immunity does not bar the circuit court from ordering both the injunction and the refunds. Plaintiffs' central argument is that the refund claim is inextricably tied to the claim for injunctive relief so that the circuit court must decide both.

¶ 26     Defendants respond that the officer-suit exception applied only to the claim for injunctive relief and, once the *Walker II* court declared the statutes unconstitutional and affirmed the injunction against their enforcement, the officer-suit exception ceased to apply. Defendants contend plaintiffs' pending claim for refunds must be severed from the claim for injunctive relief because the refund claim is a present claim against the State for an award to redress a past wrong. This court's decisions in *Leetaru* and *Parmar* support defendants' position.

¶ 27                              B. *Leetaru*

¶ 28     In *Leetaru*, the plaintiff sued the Board of Trustees of the University of Illinois and one of the university's associate vice chancellors. The plaintiff sought to enjoin the defendants from proceeding with an investigation into the plaintiff's research as a graduate student. The plaintiff conceded that the defendants were authorized to investigate research misconduct but alleged their conduct did not comply with the university's rules and regulations governing student discipline. This court held that principles of sovereign immunity did not divest the circuit court of jurisdiction over the complaint. *Leetaru*, 2015 IL 117485, ¶ 49. We explained, "[b]ecause sovereign immunity affords no protection when agents of the State have acted in violation of statutory or constitutional law or in excess of their authority, which is precisely what [the plaintiff] has alleged, Illinois precedent compels the conclusion that he was entitled to proceed in circuit court." *Id.* ¶ 50. We emphasized that the plaintiff did "not seek redress for some past wrong" but sought "only to prohibit future conduct (proceeding with the disciplinary process) undertaken by agents of the State in violation of statutory or constitutional law or in excess of their authority." *Id.* ¶ 51. We held that, because the requested relief was to prohibit future conduct, the claim was not against the State at all and did not threaten the State's sovereign immunity. *Id.*

¶ 29                                    C. *Parmar*

¶ 30        In contrast to *Leetaru*, the plaintiff in *Parmar* filed a complaint seeking to enforce a present claim. The complaint against the attorney general and the treasurer challenged the retroactive application and constitutionality of an amendment to the Illinois Estate and Generation-Skipping Transfer Tax Act (Estate Tax Act) (35 ILCS 405/1 *et seq.* (West 2014)) and sought a refund of all money paid to the treasurer pursuant to the statute. *Parmar*, 2018 IL 122265, ¶ 1. The defendants did not act outside or beyond their statutory authority because the Estate Tax Act, on its face, applied to the decedent due to her date of death. And the attorney general was responsible for administering and enforcing the statute while the treasurer was responsible for receiving and refunding money collected pursuant to it. *Id.* ¶ 25.

¶ 31        The plaintiff alleged that the defendants' conduct was unlawful because the retroactive application of the amended statute violated the Statute on Statutes (5 ILCS 70/4 (West 2014)), the due process and takings clauses of the Illinois and United States Constitutions (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §§ 2, 15), and the *ex post facto* clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 16). *Parmar*, 2018 IL 122265, ¶ 8. The plaintiff further alleged that the amendment was adopted in violation of the three readings clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)) and that the vote on the amendment was invalid because the General Assembly was given inaccurate information about the estate tax scheme. *Parmar*, 2018 IL 122265, ¶ 8.

¶ 32        This court held the officer-suit exception to sovereign immunity did not apply because the plaintiff sought damages, including a refund of an alleged overpayment of taxes. *Id.* ¶ 26. We restated the rule that the officer-suit exception applies when a plaintiff seeks to "enjoin future conduct" that is alleged to be contrary to law, not to "a complaint seeking damages for a past wrong." *Id.*

¶ 33        Unlike the plaintiff in *Leetaru* who sought to enjoin future conduct, the plaintiff in *Parmar* sought damages in the form of a refund of his payments made under the Estate Tax Act, together with interest and loss of use, for a past wrong. We observed that "*Leetaru* makes plain that a complaint seeking damages for a past wrong does not fall within the officer[-]suit exception to sovereign immunity." *Id.* (citing *Leetaru*, 2015 IL 117485, ¶ 51). Although the complaint alleged the amended

statute was unconstitutional (*id.* ¶ 8), the officer-suit exception did not apply because the requested relief was for damages, and sovereign immunity barred the circuit court from adjudicating the claim (*id.* ¶¶ 26-27).

¶ 34                                      D. The Refund Claim

¶ 35        Contrary to plaintiffs' assertion, the issues related to their refund claim and the relief they request make this case more like *Parmar* than *Leetaru*. Plaintiffs concede that section 15-1504.1 of the Code, on its face, applied to their mortgage foreclosure complaints and that defendants were responsible for administering and enforcing the statute by imposing the add-on filing fees. See *id.* ¶ 25. Like the plaintiff in *Parmar*, plaintiffs did not allege that defendants engaged in any conduct that was outside of or contrary to their statutory authority. Instead, plaintiffs alleged that the imposition of the fees was unlawful because defendants were acting pursuant to an unconstitutional statute. *Id.* ¶ 26.

¶ 36        Plaintiffs asked the circuit court to enjoin defendants from imposing the add-on fees in new mortgage foreclosure actions, which is the type of prospective injunctive relief the circuit court may order under the officer-suit exception. Indeed, the circuit court granted plaintiffs injunctive relief, and this court affirmed the judgment in *Walker II*. Therefore, plaintiffs' claim for prospective relief was not pending when this court remanded the matter to the circuit court for further proceedings.

¶ 37        On remand, plaintiffs, like the plaintiff in *Parmar*, sought a refund of money paid pursuant to an unconstitutional statute. The return of the fees would necessarily draw from state funds because defendants were statutorily obligated to deposit 98% of the collected fees with the treasurer, while retaining 2% to cover the administrative costs of collecting the fees. See 735 ILCS 5/15-1504.1(a) (2012). Because plaintiffs' claim on remand was for monetary relief to redress a past wrong, sovereign immunity barred the circuit court from adjudicating the refund claim, and the appellate court erred in holding that the officer-suit exception to sovereign immunity applies. See *Parmar*, 2018 IL 122265, ¶ 26 (citing *Leetaru*, 2015 IL 117485, ¶ 51).

¶ 38 The appellate court concluded "the defendant circuit court clerks collected the filing fees from the plaintiffs in violation of the constitution and absent legal authority to do so; accordingly, their actions were not considered as actions by the State." 2023 IL App (3d) 220387, ¶ 24. This statement is accurate to the extent the officer-suit exception applies to a claim to prospectively enjoin unlawful conduct and explains why sovereign immunity did not bar the circuit court from enjoining the enforcement of the unconstitutional fee statute. See *Parmar*, 2018 IL 122265, ¶ 22. But the appellate court overlooked the distinction between claims for forward-looking relief and for a present claim to redress a past wrong. A complaint that pairs the two types of claims based on the same conduct does not trigger the officer-suit exception for all the claims.

¶ 39 In fact, sovereign immunity may even bar a claim for injunctive relief if the plaintiff is attempting to enforce a present claim against the State. In *Ellis v. Board of Governors of State Colleges & Universities*, 102 Ill. 2d 387, 394 (1984), the plaintiff asserted that, because her action was based on an alleged violation of a statute and because she was asking for injunctive relief (in addition to money damages), her action was not within the exclusive jurisdiction of the Court of Claims but could be brought in the circuit court. This court held that, despite the plaintiff's attempt to frame her requested relief as an injunction, both claims were intended to enforce a present claim of unlawful constructive discharge and the officer-suit exception did not apply to either claim. *Id.* at 395.

¶ 40 In a related argument, plaintiffs assert the circuit court has exclusive jurisdiction to resolve "all aspects of litigation which address the constitutionality of legislation, including ordering a complete and effective remedy." However, the sovereign immunity doctrine is intended to protect the State from interference in its performance of government functions and preserve its control over State coffers, and ordering the circuit court to adjudicate a present claim to redress a past wrong undermines that goal. *Leetaru*, 2015 IL 117485, ¶ 47. Moreover, the courts *did* address the constitutionality of the $50 filing fee, which ceased to be at issue after the *Walker II* court ordered the remand. The dispositive question is whether the circuit court had jurisdiction over the separate refund claim that was pending on remand, and the refund claim is the type of claim to be addressed by the Court of Claims.

¶ 41    Plaintiffs argue that, even if sovereign immunity bars a claim for damages, they are, in fact, seeking restitution because " '[d]amages differs from restitution in that damages is measured by the plaintiff's loss; restitution is measured by the defendant's unjust gain.' " *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 257 (2004) (quoting 1 Dan B. Dobbs, Remedies § 3.1, at 278 (2d ed. 1993)). Plaintiffs assert that restitution claims and damages claims are different for purposes of sovereign immunity. At this point we note the parties have used various terms like disgorgement, refund, and compensation to describe the requested relief. But the crucial lesson of our sovereign immunity jurisprudence is that the application of the officer-suit exception turns on whether the requested relief is prospective, even if it involves money.

¶ 42    This point is illustrated by our decisions in *City of Springfield v. Allphin*, 74 Ill. 2d 117 (1978) (*Allphin I*), and *City of Springfield v. Allphin*, 82 Ill. 2d 571 (1980) (*Allphin II*), where the officer-suit exception authorized the circuit court to award monetary compensation in the form of injunctive relief rather than a refund. In *Allphin I*, the parties disputed the effective date of a statute that reduced the State's fee for the collection of certain municipal taxes. *Allphin II*, 82 Ill. 2d at 573. This court held that the State, by collecting the greater fee during a period when the lesser fee was due, had retained funds that should have been distributed to the plaintiff municipalities under the statute. *Id.* at 573-74. The *Allphin I* court remanded the cause to the circuit court with directions to fashion injunctive relief designed to halt the withholding of additional fees until the amount overwithheld had been compensated for. *Id.* at 574.

¶ 43    More specifically, the *Allphin I* court ordered the circuit court to grant the plaintiffs leave to amend their complaint to define more precisely the tax revenue from which the plaintiffs could obtain reimbursement. "The net effect of such relief should be to reduce the amount of such taxes withheld by the State until the earlier overwithholding is compensated for." *Allphin I*, 74 Ill. 2d at 131. "Having determined that the defendant withheld an inappropriate amount of tax, in violation of the law, the court fashioned a remedy to correct that violation by allowing the defendant to be restrained from withholding future taxes until the amount overwithheld had been compensated for." *Allphin II*, 82 Ill. 2d at 580.

¶ 44        In other words, the State officers were enjoined from collecting future taxes until they credited the plaintiffs for their overpayments. The circuit court had jurisdiction under the officer-suit exception to prospectively enjoin the unlawful conduct without offending sovereign immunity principles. Ultimately, the legislature appropriated funds for the payment of the amounts overwithheld, and those payments were not at issue in *Allphin II*. *Id.* at 574.

¶ 45        The *Allphin I* court endorsed injunctive relief to credit the plaintiffs for their overpayments and to facilitate reimbursement without ordering a refund. By contrast, plaintiffs have specifically requested a refund, not prospective injunctive relief, which is a crucial distinction for purposes of the officer-suit exception to sovereign immunity.

¶ 46        Plaintiffs also assert that, if their refund claim turns out to be time-barred in the Court of Claims, the State's retention of the unconstitutionally taken funds would violate the takings clause of the United States Constitution and the Illinois Constitution. But adopting plaintiffs' position that a procedural bar to recovery in the Court of Claims is tantamount to a takings clause violation would negate the procedural requirements that the General Assembly enacted to prescribe the court's authority. The refunds qualify as the type of relief the Court of Claims may award, but we need not decide and do not consider whether plaintiffs are procedurally barred from pursuing their refund claim in the Court of Claims.

¶ 47        Finally, plaintiffs argue the *Walker II* court, when remanding the cause, ordered the circuit court to award the refunds. Plaintiffs misinterpret the court's broad directive "for further proceedings consistent with this opinion." Dismissing the refund claim based on sovereign immunity is consistent with *Walker II*, as well as *Parmar* and *Leetaru*.

¶ 48                                III. CONCLUSION

¶ 49        The Will County circuit court had jurisdiction under the officer-suit exception to sovereign immunity to enjoin the prospective enforcement of the fee statute as facially unconstitutional. But once the courts declared the unconstitutionality of the fee statute and ordered the permanent injunction, plaintiffs' claim for a monetary award to redress a past wrong was the type of retrospective claim that is the

- 13 -

province of the Court of Claims, not the circuit court. We reverse the appellate court's judgment and affirm the circuit court's judgment of dismissal, accordingly.

¶ 50        Appellate court judgment reversed.

¶ 51        Circuit court judgment affirmed.

¶ 52        JUSTICE NEVILLE took no part in the consideration or decision of this case.