**2025 IL 130033**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 130033)

TERRENCE LAVERY *et al.*, Appellees, v. THE DEPARTMENT OF FINANCIAL
AND PROFESSIONAL REGULATION, Appellant.


*Opinion filed September 18, 2025.*


JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Holder White, Cunningham,
Rochford, and O'Brien concurred in the judgment and opinion.


## OPINION

¶ 1     Plaintiffs, Terrence Lavery and Illinois Professional Health Program, LLC,
provide their clients with counseling and clinical services, including substance
abuse rehabilitation programs. Plaintiffs provided one of their clients, a doctor, with
rehabilitation services after the doctor was suspended from practicing medicine.
When the doctor later sought reinstatement of his medical license, an administrative

hearing was held to determine whether restoration of the doctor's medical license was in the public's interest. In connection with this hearing, the Department of Financial and Professional Regulation (Department) demanded that plaintiffs provide it with a copy of Lavery's personal notes relating to the rehabilitation services Lavery provided to the doctor. Plaintiffs filed the present action against the Department seeking a protective order from the Cook County circuit court to bar disclosure of Lavery's personal notes in the administrative proceeding. Plaintiffs maintained that Lavery's personal notes were protected from disclosure under section 3(b) of the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/3(b) (West 2020)). After an *in camera* inspection of the undisclosed documents, the circuit court agreed with plaintiffs and granted their request for a protective order barring the Department from obtaining a copy of the undisclosed documents. In addition, the circuit court awarded plaintiffs attorney fees and costs pursuant to section 15 of the Confidentiality Act. *Id.* § 15. The Department appealed, challenging only the circuit court's award of attorney fees and costs, arguing that the circuit court's award of fees and costs violated principles of sovereign immunity. The appellate court rejected the Department's sovereign immunity challenge and affirmed the circuit court's award of fees and costs. We granted the Department's petition for leave to appeal to review the circuit court's monetary judgment for attorney fees and costs against the Department pursuant to section 15 of the Confidentiality Act. *Id.*; Ill. S. Ct. R. 315 (eff. Oct. 1, 2021). For the following reasons, we reverse the appellate court's judgment and reverse that portion of the circuit court's judgment granting plaintiffs a monetary award of attorney fees and costs against the Department.

## I. BACKGROUND

Our legislature has declared that it is a matter of public interest that persons licensed to practice in regulated professions in Illinois be subject to standards of competency. 20 ILCS 2105/2105-10 (West 2020). To further this public policy directive, the legislature has tasked the Department with regulating professional licenses in Illinois, including medical and controlled substance licenses. *Id.* § 2105-15; 225 ILCS 60/3 (West 2020); 720 ILCS 570/301 (West 2020). Medical practitioners must have an active license (225 ILCS 60/3 (West 2020)); show good "moral character" (*id.* § 9(1)); and be "physically, mentally, and professionally

capable of practicing medicine with reasonable judgment, skill, and safety" (*id.* § 9(4)).

¶ 4 In 2014, the Department filed a petition to temporarily suspend the medical and controlled substances licenses of Dr. Anil K. Ramachandran. The Department and Dr. Ramachandran subsequently agreed to a consent order that subjected the doctor to an indefinite suspension of his licenses. Following the entry of the consent order, Dr. Ramachandran underwent corrective measures to regain his licenses, including completion of a rehabilitation program to address substance abuse. Lavery, who is a licensed clinical therapist, provided clinical services to Dr. Ramachandran during this substance abuse rehabilitation program and served as Dr. Ramachandran's case manager, ensuring Dr. Ramachandran's compliance with the substance abuse recovery plan. Lavery provided these services as an employee of Illinois Professionals Health Program, LLC.

¶ 5 Following completion of the substance abuse program, Dr. Ramachandran filed a petition with the Department seeking restoration of his licenses, asserting that he had completed various qualifying examinations and was, at that time, employed as a certified drug and alcohol counselor. [1] An administrative law judge (ALJ) presided over an administrative hearing on Dr. Ramachandran's request for licensing restoration. At the hearing, Lavery testified about the doctor's recovery plan, revealing the existence of personal notes that Lavery made and kept in connection with the mental health services he provided. The Department asked Lavery for a copy of Lavery's personal notes, but Lavery rejected the request on the basis that his personal notes were his work product that he was not required to disclose under the terms of the Confidentiality Act. [2] Lavery moved for a protective order in the administrative proceeding, but the ALJ denied the motion and ordered Lavery to produce the withheld notes.

---

[1] Section 43 of the Medical Practices Act of 1987 provides that the Department may restore suspended licenses "unless after an investigation and hearing, the Secretary [of Financial and Professional Regulation] determines that restoration is not in the public interest." 225 ILCS 60/43 (West 2020) (restoration of license from discipline).

[2] Under section 3(b) of the Confidentiality Act, a therapist's personal notes "are the work product and personal property of the therapist and shall not be subject to discovery in any judicial, administrative or legislative proceeding." 740 ILCS 110/3(b) (West 2020).

¶ 6       Lavery and his employer, Illinois Professionals Health Program, LLC (plaintiffs), then filed a complaint in the circuit court seeking a protective order pursuant to section 15 of the Confidentiality Act, which provides that "[a]ny person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief." 740 ILCS 110/15 (West 2020). Plaintiffs sought a declaration that the withheld documents were protected by the therapist's work product privilege codified in section 3(b) of the Confidentiality Act (*id.* § 3(b)) and sought a protective order stating that Lavery was not required to produce the documents to the Department. Plaintiffs also sought attorney fees and costs pursuant to section 15 of the Confidentiality Act (*id.* § 15). The ALJ stayed the administrative proceeding pending the circuit court's resolution of plaintiffs' complaint.

¶ 7       The circuit court conducted an *in camera* inspection of the nondisclosed documents and agreed with plaintiffs that the withheld documents were protected from disclosure under the terms of the Confidentiality Act. The circuit court concluded that Lavery qualified as a therapist as defined by the Confidentiality Act, that the documents that the Department sought from Lavery were his personal notes protected from disclosure under the terms of the Confidentiality Act, and that the Department would violate the Confidentiality Act by obtaining copies of those notes in the administrative proceeding. 2023 IL App (1st) 220990, ¶ 2. The circuit court, therefore, granted plaintiffs' request for a protective order based on these findings. *Id.* ¶ 18. The Department did not challenge the circuit court's protective order. *Id.* ¶ 2.

¶ 8       Plaintiffs also asked the circuit court to enter an award of attorney fees and costs under section 15 of the Confidentiality Act, which provides that "[a]ny person aggrieved by a violation of th[e] Act may sue for damages, an injunction, or other appropriate relief" and that "[r]reasonable attorney's fees and costs may be awarded to [a] successful plaintiff in any action under th[e] Act" (740 ILCS 110/15 (West 2020)). 2023 IL App (1st) 220990, ¶ 19. The circuit court granted plaintiffs' request for attorney fees and costs, concluding that the statutory language of section 15 of the Confidentiality Act allowed plaintiffs to recover reasonable attorney fees and costs from the Department. The circuit court, therefore, entered a monetary judgment for plaintiffs in a total of $10,639.21 for plaintiffs' attorney fees and costs to be paid by the Department. *Id.*

¶ 9 The Department appealed the attorney fees and costs portion of the circuit court's judgment, arguing for the first time on appeal that the circuit court's order directing the Department to pay plaintiffs' attorney fees and costs was barred by sovereign immunity.[3] *Id.* The appellate court addressed this argument raised for the first time on appeal because sovereign immunity implicates the circuit court's subject-matter jurisdiction and may be raised at any time. *Id.* ¶ 24 (citing *Currie v. Lao*, 148 Ill. 2d 151, 157 (1992) ("the issue of subject-matter jurisdiction cannot be waived.")).

¶ 10 In response to the Department's sovereign immunity argument on appeal, plaintiffs invoked the " 'prospective injunctive relief exception' " to sovereign immunity. *Id.* ¶¶ 26-27 (quoting *C.J. v. Department of Human Services*, 331 Ill. App. 3d 871, 876 (2002)). This exception is most often called the " 'officer suit exception.' " *Parmar v. Madigan*, 2018 IL 122265, ¶ 22 (quoting *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 260 (2005)). However, like the appellate court below, in this appeal we refer to this exception as the "prospective injunctive relief exception," as this reference "captures the essential element of the exception: forward-looking relief." 2023 IL App (1st) 220990, ¶ 27. The prospective injunctive relief exception allows an action against a State agency or officer to proceed in the circuit court where a plaintiff is not attempting to enforce a present claim against the State but, instead, is seeking to enjoin a State officer from taking *future* actions that exceed his or her delegated authority when the future actions would result in a violation of the plaintiff's protectable legal interests. *Id.*

¶ 11 Here, plaintiffs argued on appeal that this prospective injunctive relief exception applies in this case with respect to the circuit court's monetary judgment where the primary relief sought by plaintiffs was to enjoin a State actor (the Department) from engaging in prohibited conduct (discovery of a therapist's personal notes) and the circuit court's monetary judgment for attorney fees and

---

[3]Challenges to a circuit court's subject-matter jurisdiction under sovereign immunity principles are often raised in the circuit court proceeding by filing a motion pursuant to section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2020)). *Walker v. Chasteen*, 2025 IL 130288, ¶ 16 ("When a defendant claims that sovereign immunity divests the circuit court of jurisdiction, section 2-619(a)(1) prescribes a motion to dismiss that alleges 'the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction.' " (quoting 735 ILCS 5/2-619(a)(1) (West 2020))).

costs against the Department was merely ancillary to this permissible injunctive relief. *Id.* ¶ 3. The Department, however, maintained that the prospective injunctive relief exception does not apply with respect to plaintiffs' request for attorney fees and costs because this additional monetary claim is not "part and parcel" of the prospective injunctive relief at the center of the lawsuit. *Id.* ¶ 28. Instead, the Department argued, the circuit court's fees and costs award was a separate monetary judgment for which there must be a specific statutory waiver of sovereign immunity by the legislature to be allowable under sovereign immunity principles. *Id.* The Department maintained that the legislature has not provided an explicit statutory waiver of sovereign immunity in section 15 of the Confidentiality Act that would allow a monetary judgment against the Department. *Id.* ¶¶ 28, 30.

¶ 12    The appellate court disagreed with the Department and held that, because plaintiffs were required to initiate a circuit court action to enjoin the Department from unlawful discovery in the administrative proceeding, plaintiffs' request for fees and costs was "part and parcel of the injunctive relief that is not barred by sovereign immunity." *Id.* ¶ 31. The appellate court, therefore, agreed with plaintiffs and concluded that the attorney fees and costs expended by plaintiffs are properly characterized as ancillary to the prospective injunctive relief exception rather than as a separate award of monetary damages. *Id.* ¶¶ 31, 45.[4]

¶ 13    The appellate court also rejected the Department's alternative arguments (1) that the prospective injunctive relief exception does not apply because plaintiffs' complaint failed to identify any individual State officer who would act outside legal boundaries and (2) that plaintiffs could not rely on the prospective

---

[4]As an alternative basis for affirming the circuit court's award for attorney fees and costs, plaintiffs also argued that, even if sovereign immunity was applicable, the legislature waived sovereign immunity in the Confidentiality Act to allow the circuit court jurisdiction to award fees and costs against the State. 2023 IL App (1st) 220990, ¶ 26. Because the appellate court agreed with plaintiffs that the prospective injunctive relief exception applied regardless of any express waiver by the legislature, it affirmed the circuit court's attorney fees and costs award without addressing this alternative argument. *Id.* ¶ 45. On appeal before this court, plaintiffs argue that the circuit court's monetary judgment against the Department for attorney fees and costs can be affirmed on this basis, and we address this argument below.

injunctive relief exception because they failed to allege that the Department actually violated the Confidentiality Act. *Id.* ¶¶ 38-44.

¶ 14 We granted the Department's petition for leave to appeal to review its claim that the circuit court's monetary judgment against the Department for plaintiffs' attorney fees and costs violates sovereign immunity principles, an issue that we review *de novo*. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 294 (2010) ("An argument challenging the subject matter jurisdiction of the circuit court presents a question of law that this court will review *de novo*.").

¶ 15                                     II. ANALYSIS

¶ 16                            A. Statutory Sovereign Immunity

¶ 17 Sovereign immunity is derived from English common-law doctrine "that the Crown is immune from any suit to which it has not consented." *Feres v. United States*, 340 U.S. 135, 139 (1950). The reasoning behind the sovereign being exempt from suit is that "there can be no legal right as against the authority that makes the law on which the right depends." *Kawananakoa v. Polyblank*, 205 U.S. 349, 353 (1907). Illinois has adopted the concept of sovereign immunity as part of a public policy aimed at protecting the State from interference in its performance of the functions of government and preserving the State's control over its coffers. *S.J. Groves & Sons Co. v. State*, 93 Ill. 2d 397, 401 (1982); *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 159 (2010).

¶ 18 The Illinois Constitution of 1870 provided: "The state of Illinois shall never be made defendant in any court of law or equity." Ill. Const. 1870, art. IV, § 26. This constitutional doctrine of sovereign immunity applied to lawsuits of any kind against the State of Illinois and its agencies unless the State consented to being sued. *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 25. Consequently, no suit could be maintained against the State under this constitutional clause. *Id.* The State's constitutional sovereign immunity extended to suits against a State agency or department. *Noorman v. Department of Public Works & Buildings*, 366 Ill. 216, 219 (1937).

¶ 19 The Illinois Constitution of 1970 abolished constitutional sovereign immunity but provided that the General Assembly could reinstate statutory sovereign immunity. Ill. Const. 1970, art. XIII, § 4 ("the General Assembly may provide [sovereign immunity] by law"). Accordingly, our state's constitution vests the General Assembly with exclusive power to establish the conditions upon which claims against the State may be raised. The General Assembly subsequently established statutory sovereign immunity by enacting the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2020)), which provides, in general, that "the State of Illinois shall not be made a defendant or party in any court" (*id.* § 1) except as provided in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2020)) and as provided in several other statutes not relevant to this appeal (745 ILCS 5/1 (West 2020)). The legislature separately enacted the Court of Claims Act to establish the Court of Claims "as the exclusive forum for litigants to pursue claims against the State." *Township of Jubilee v. State*, 2011 IL 111447, ¶ 22 (citing 705 ILCS 505/8 (West 2008)).

¶ 20 Part of the rationale for establishing exclusive jurisdiction over monetary claims against the State with the Court of Claims is to "provide for the orderly disbursement of State funds if a plaintiff's claim has merit, whereas the State has not otherwise budgeted for such payment." *Aurora National Bank v. Simpson*, 118 Ill. App. 3d 392, 397 (1983). The Court of Claims is not a court within the meaning of the judicial article of our state constitution (Ill. Const. 1970, art. VI). Instead, it is a part of the legislative branch of our state's government. *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 96-97 (2001).

¶ 21 B. Question of Statutory Interpretation

¶ 22 Because sovereign immunity is created by statute in this state, the determination of whether the circuit court has subject-matter jurisdiction to enter a monetary judgment against the Department for attorney fees and costs pursuant to section 15 of the Confidentiality Act involves a question of statutory interpretation of the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2020)) and section 15 of the Confidentiality Act (740 ILCS 110/15 (West 2020)). This analysis presents us with a legal question that is governed by well-established legal principles. "The cardinal rule in construing a statute is to ascertain and give effect to the legislative intent."

*In re Jarquan B.*, 2017 IL 121483, ¶ 22. "The most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself." *Id.* "In determining the plain meaning of statutory terms, we consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it." *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). "If the language of a statute is clear and unambiguous, we will give effect to the statute's plain meaning ***." *In re Jarquan B.*, 2017 IL 121483, ¶ 22. "[I]n determining the intent of the legislature, the court may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved." *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). "We do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *Blum*, 235 Ill. 2d at 29.

¶ 23
C. The Prospective Injunctive Relief Exception Concerns
Claims That Are Not Against the State and,
Therefore, Fall Outside the Purview of the
State Lawsuit Immunity Act

¶ 24
In the present case, plaintiffs brought this action against the Department in the circuit court seeking a protective order barring the Department from obtaining copies of Lavery's personal notes on the basis that the notes were protected from disclosure under the Confidentiality Act. The circuit court granted plaintiffs' request for a protective order, and the Department does not challenge the circuit court's subject-matter jurisdiction to enter the protective order. The Department challenges only the circuit court's authority to enter the monetary judgment against the Department for plaintiffs' attorney fees and costs.

¶ 25
The appellate court upheld the circuit court's subject-matter jurisdiction to enter a monetary award of fees and costs against the Department based on the prospective injunctive relief exception to sovereign immunity. 2023 IL App (1st) 220990, ¶ 45. As stated, the prospective injunctive relief exception allows a plaintiff to file an action in the circuit court seeking to enjoin a State officer from taking future actions that exceed the State agent's or officer's delegated authority when the future actions would violate the plaintiff's protectable legal interests. *PHL, Inc.*, 216 Ill. 2d at 261

(citing *Schwing v. Miles*, 367 Ill. 436 (1937)). The appellate court concluded that the circuit court had subject-matter jurisdiction to enter a monetary award against the Department for plaintiffs' attorney fees and costs under this exception because, the appellate court concluded, the attorney fees and costs are ancillary to the prospective injunctive relief exception. 2023 IL App (1st) 220990, ¶ 45. The appellate court concluded that, under this exception, it had subject-matter jurisdiction to enter the monetary judgment irrespective of the existence of any explicit waiver of sovereign immunity by the legislature. *Id.* ¶¶ 45, 47.

¶ 26                                 1. The Rationale of the Exception

¶ 27         The prospective injunctive relief exception has a "long and complex history" and is founded on the principle that, " '[w]here the defendant officer act[s] in excess of his statutory authority, the rights of the plaintiffs to be free from the consequences of his action outweigh the interest of the State which is served by the sovereign immunity doctrine.' " *PHL, Inc.*, 216 Ill. 2d at 261-62 (quoting *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 188 (1984)).

¶ 28         In *Walker v. Chasteen*, 2025 IL 130288, ¶ 21, we suggested that cases involving the prospective injunctive relief exception are cases that, in substance, are not actions against the State.

> "Where, for example, a plaintiff alleges that the State officer's conduct violates statutory or constitutional law or exceeds his or her authority, such conduct is not regarded as the conduct of the State. The underlying principle is that conduct taken by a State officer without legal authority strips the officer of his or her official status." *Id.*

Therefore, the prospective injunctive relief exception is, in substance, not strictly an exception to sovereign immunity but a legal theory that removes a certain type of lawsuit from the legislature's sovereign immunity concerns set out in the State Lawsuit Immunity Act.

¶ 29         Section 1 of the State Lawsuit Immunity Act provides "[e]xcept as provided in [the Court of Claims Act and other listed acts], the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2020). A plaintiff is

allowed to proceed with a request for prospective injunctive relief against a State agent or officer in the circuit court under the prospective injunctive relief exception because the plaintiff's request for prospective injunctive relief is not considered a "claim against the State" and the legislature, therefore, has allowed the circuit court subject-matter jurisdiction to grant prospective injunctive relief under these circumstances.

¶ 30        As we explained in *Walker*, the purpose of sovereign immunity is to protect the State from interference in its performance of government functions and preserve its control over State coffers. *Walker*, 2025 IL 130288, ¶ 21. To determine whether an action is in fact a suit against the State, we must consider the issues involved and the relief sought rather than focusing on the formal designation of the parties. *Currie*, 148 Ill. at 158. "An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Id.*

¶ 31        The State cannot justifiably claim interference with its functions when a proposed future act by a State agent is unauthorized or illegal. *Walker*, 2025 IL 130288, ¶ 22. In addition, such prospective injunctive relief does not normally impact the State's coffers, *i.e.*, does not require payment of funds that the State has not otherwise budgeted for payment. Thus, a complaint seeking to prospectively enjoin unlawful conduct may be brought against State agents in the circuit court without offending sovereign immunity principles codified by our legislature in the State Lawsuit Immunity Act.[5]

¶ 32                            2. The Requirement of Forward-Looking Relief

¶ 33        An important aspect of the prospective injunctive relief exception is the *prospective* element of the exception. *Green v. State*, 2023 IL App (1st) 220245,

---

[5]Suits to enjoin conduct that violates the law or exceeds the authority of a public official are distinguishable from suits that seek to enjoin public officials from taking actions in governmental matters over which they have discretionary authority. The latter suits are deemed to be actions against the State, and sovereign immunity applies. *American Federation of State, County & Municipal Employees, Council 31 v. Ryan*, 347 Ill. App. 3d 732, 745 (2004).

¶ 22 ("There is *** one crucial limitation to the officer suit exception: it is only available in cases where the plaintiffs are seeking *prospective* relief, typically in the form of an injunction." (Emphasis in original.)); see *Wilson v. Quinn*, 2013 IL App (5th) 120337, ¶ 15 ("There exists an important, often fine distinction between a suit which seeks to compel future action and one which seeks to present a claim to remedy a past wrong."); *Bio-Medical Laboratories, Inc. v. Trainor*, 68 Ill. 2d 540, 548 (1977) ("Plaintiff is not attempting to enforce a present claim against the State but, rather, seeks to enjoin the defendant from taking actions in excess of his delegated authority and in violation of plaintiff's protectible legal interests."); *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 51 ("Leetaru's action does not seek redress for some *past wrong*. As we have explained, it seeks only to prohibit future conduct (proceeding with the disciplinary process) undertaken by agents of the State in violation of statutory or constitutional law or in excess of their authority. Claims of this kind are not against the State at all and do not threaten the State's sovereign immunity." (Emphasis added.)).

¶ 34        For example, in *Parmar*, the plaintiff filed a complaint against the Illinois Attorney General and the Treasurer, "challenging the application and constitutionality of an amendment to the Illinois Estate and Generation-Skipping Transfer Tax Act (Estate Tax Act) (35 ILCS 405/1 *et seq.* (West 2014)) and seeking a refund of all moneys paid to the Treasurer pursuant to the Estate Tax Act." *Parmar*, 2018 IL 122265, ¶ 1. This court determined that the prospective injunctive relief exception did not apply in that case because, although the plaintiff alleged the defendants' conduct was unlawful because they acted pursuant to an unconstitutional statute, the plaintiff sought damages, including a refund of money, "for a past wrong." *Id.* ¶¶ 26-27.

¶ 35        Here, plaintiffs' complaint sought a protective order against the Department to bar the Department from obtaining copies of Lavery's personal notes that plaintiffs maintained were protected under the Confidentiality Act, and as stated, the Department does not challenge the circuit court's subject-matter jurisdiction to enter the protective order. Nothing in the record compels us to, *sua sponte*, consider the circuit court's subject-matter jurisdiction to enter the protective order. *People v. Capitol News, Inc.*, 137 Ill. 2d 162, 170 (1990) (lack of subject-matter jurisdiction may be raised by this court *sua sponte*). Accordingly, we offer no analysis on the circuit court's subject-matter jurisdiction to enter the unchallenged protective order.

¶ 36 However, this appeal concerns a monetary judgment the circuit court entered along with the protective order. Therefore, regardless of the circuit court's subject-matter jurisdiction to enter the protective order against the Department, the issue we must resolve is whether the circuit court *also* had subject-matter jurisdiction to enter additional relief in the form of a monetary award against the Department for attorney fees and costs.

¶ 37 A monetary judgment against a State agency is an entirely different category of relief from mere prospective injunctive relief to prevent future unlawful conduct. While a claim under the prospective injunctive relief exception is not deemed an actual claim against the State, the rationale behind this exception does not apply to a monetary award against a State agency that must be paid out of the State's coffers. See, *e.g.*, *Campbell v. Department of Public Aid*, 61 Ill. 2d 1, 5 (1975) ("To the extent *** that [the appellate court's] judgment purports to authorize the circuit court to enter a monetary judgment against the State of Illinois, its judgment was erroneously entered."). The rationale for allowing circuit courts to have subject-matter jurisdiction to enter judgments granting prospective injunctive relief does not translate to subject-matter jurisdiction to also enter monetary judgments against the State, as additional relief, for attorney fees and costs against the State, where (1) such a monetary judgment impacts property of the State, (2) the legislature has not explicitly authorized the monetary judgment, and (3) the monetary judgment does not provide plaintiffs with prospective relief.

¶ 38 D. Sovereign Immunity Bars Monetary Judgments
Against the State for Attorney Fees or Costs
Unless the Legislature Has Explicitly Waived
Sovereign Immunity in Statutory Language

¶ 39 Since Illinois's adoption of constitutional sovereign immunity, Illinois courts have consistently held that, under the now repealed constitutional provision, the State could not be subject to a monetary judgment of attorney fees and costs. See *Attorney General v. Illinois Agricultural College*, 85 Ill. 516, 521 (1877) ("There was, also, most manifest error in rendering a decree for costs, as the State is never liable to be decreed to pay costs; and if the decree is intended to apply to the Attorney General, it is equally erroneous, as he only acted in his official character

- 13 -

and on behalf of the State, and in the discharge of an official duty."); *People v. Summy*, 377 Ill. 255, 261 (1941) ("It is an established principle that the People are never liable for costs unless rendered liable under an express statutory provision."); *People v. Rocco*, 4 Ill. App. 2d 238, 243 (1955) (citing *Summy*, 377 Ill. 255).

¶ 40    In *Galpin v. City of Chicago*, 249 Ill. 554, 566 (1911), this court stated more than 100 years ago, "The courts can not, merely by inference and implication, assume the power and exercise the authority to impose costs against the State. *** 'The sovereignty of the government not only protects it against suits directly, but against judgments even for costs, when it fails in prosecutions.' [Citation.]"

¶ 41    Nothing in the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2020)) suggests that the legislature intends for statutory sovereign immunity to operate differently than constitutional sovereign immunity with respect to claims against the State for attorney fees and costs. In *Department of Revenue v. Appellate Court of Illinois, First District*, 67 Ill. 2d 392, 396 (1977), we quoted the above language from *Galpin* and further stated that

> "[t]his immunity of the State from the assessment of costs, unless there is legislative authorization, was succinctly stated long ago in *People v. Pierce*, (1844) 6 Ill. (1 Gilm.) 553, 555: 'A State is never bound to give a bond for costs in any case; neither does it ever pay costs, except in some particular way pointed out by statute.' "

See L.S. Teller, *Liability of State, or Its Agency or Board, for Costs in Civil Action to Which It Is a Party*, 72 A.L.R.2d 1379, § 3 (1960) ("The well-established principle that the sovereign (including, in this country, a state) cannot be sued without its consent extends to the matter of costs, with the result that, absent a statute indicating its consent thereto, a state litigant may not be subjected to costs of suit for which a private litigant would be liable. This principle has been applied or recognized in many cases.").

¶ 42    Because our state's constitution gives our legislature exclusive authority over the terms and conditions upon which the State may be subject to a monetary judgment, in order for the circuit court to have subject-matter jurisdiction to enter a monetary award against the State for attorney fees or costs, the legislature must first provide a waiver of sovereign immunity, and that waiver must be expressed by

*explicit* legislative authorization and must appear in affirmative statutory language. *In re Special Education of Walker*, 131 Ill. 2d 300, 304 (1989). "Although the State has [sovereign] immunity, the legislature may, by statute, consent to liability of the State. The State's consent must be, however, 'clear and unequivocal.' " *Id.* at 303 (quoting *Martin v. Giordano*, 115 Ill. App. 3d 367, 369 (1983)); see *Department of Revenue*, 67 Ill. 2d at 396 (the State's waiver of immunity must be expressed through specific legislative authorization and must appear in affirmative statutory language).

¶ 43　　In *Walker*, we explained that claims for money damages against the State are generally barred unless the State has consented to them—unless by law, sovereign immunity has been waived. That waiver will not be lightly assumed; it must be "clear and unequivocal." *Walker*, 131 Ill. 2d at 303.

¶ 44　　More specifically, with respect to an award for litigation expenses, it has been long established that a party may not recover from the State, or one of its agencies, attorney fees or other litigation costs in a civil action unless there is *affirmative* statutory language reflecting the State's consent to the imposition of costs against it. See *Williams v. Davenport*, 306 Ill. App. 3d 465, 469 (1999). " 'Statutes which in general terms authorize imposing costs in various actions or proceedings but do not specifically refer to the State are not sufficient authority to hold the State liable for costs.' " *City of Springfield v. Allphin*, 82 Ill. 2d 571, 578 (1980) (quoting *Department of Revenue*, 67 Ill. 2d at 396). The State's consent to the imposition of costs against it must appear in affirmative statutory language. *Department of Revenue*, 67 Ill. 2d at 396; see *Summy*, 377 Ill. at 261.

¶ 45　　This also "reflects that cost statutes, being in derogation of the common law, are to be strictly construed [citations], and that the rights of the sovereign are not impaired by general legislative enactments which apply to private rights unless an intent to make the State liable is expressed in the statute." *Department of Revenue*, 67 Ill. 2d at 396. Nothing will be read into cost statutes by intendment or implication. See *City of Springfield*, 82 Ill. 2d at 577.

¶ 46　　Based on the foregoing, in order for the State to be liable for attorney fees and costs under section 15 of the Confidentiality Act, the State's consent to awards of attorney fees and costs must appear in clear and affirmative statutory language. For example, in *Walker*, even a statute requiring a "governmental entity" to pay

postjudgment interest was not deemed a waiver of sovereign immunity; even though the State obviously qualifies as a "governmental entity," the State was not expressly identified in the statute. *Walker*, 131 Ill. 2d at 304. Although that case concerned an interest statute, rather than a costs statute, the *Walker* court's task was a determination of whether the legislature had waived sovereign immunity with "clear and unequivocal" language. *Id.* at 304-05.

¶ 47    In *Department of Revenue*, we held that legislation that included terms such as "any person" or "either party" was not sufficient to impose fees and taxing costs against the Department of Revenue for the cost of printing excerpts from a record, because the State failed to be specifically referenced. *Department of Revenue*, 67 Ill. 2d at 396-98.

¶ 48    This is further illustrated by examples where our courts have found that the legislature intended to waive sovereign immunity, including section 19 of the Illinois Educational Labor Relations Act (115 ILCS 5/19 (West 2020)) and section 25 of the Illinois Public Labor Relations Act (5 ILCS 315/25 (West 2020)), both of which state: "For purposes of this Act, *the State of Illinois waives sovereign immunity*." (Emphasis added.) See *Parmar*, 2018 IL 122265, ¶ 31 (discussing section 19 of the Illinois Educational Labor Relations Act (115 ILCS 5/19 (West 2014))). With these examples in mind, we turn to the relevant statutory language.

¶ 49            E. Section 15 of the Confidentiality Act Lacks the Required
               Explicit Waiver of Sovereign Immunity by the Legislature

¶ 50    Section 15 of the Confidentiality Act does not include a clear and unequivocal consent by the legislature for an award of fees and costs against the State. Without the legislature's explicit consent, the State Lawsuit Immunity Act bars the circuit court from having subject-matter jurisdiction to award attorney fees and costs against the State and its agencies under the statutory provision.

¶ 51    Section 15 of the Confidentiality Act states, in full, as follows: "Any person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief. Reasonable attorney's fees and costs may be awarded to the successful plaintiff in any action under this Act." 740 ILCS 110/15 (West 2020). Therefore, the language of section 15 authorizes an award of fees and costs *only* in

general terms; it does not explicitly authorize such a monetary judgment against the State. Nowhere in this language did the legislature make "explicit" that the State or one of its agencies may be liable for attorney fees and costs. See *Parmar*, 2018 IL 122265, ¶ 31. Section 15 of the Confidentiality Act does not explicitly name the State or its agencies as being liable for fees and costs under the statute; it speaks generally of "any person aggrieved" suing for relief and permits fees for a successful plaintiff, but this general language is insufficient to waive sovereign immunity. The Confidentiality Act, therefore, does not waive statutory sovereign immunity, which would allow the circuit court subject-matter jurisdiction to enter a monetary judgment requiring the State to pay attorney fees and costs.

¶ 52        Plaintiffs cite *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, to assert that the legislature has waived sovereign immunity under the general terms of the Confidentiality Act. In that case, this court was faced with the issue of whether the Treasurer was required to file an appeal bond pursuant to section 19(f)(2) of the Workers' Compensation Act (820 ILCS 305/19(f)(2) (West 2012)) in order to obtain judicial review of a decision by the Illinois Workers' Compensation Commission. *Illinois State Treasurer*, 2015 IL 117418, ¶ 1. The Treasurer filed the appeal in his capacity as the custodian of the Injured Workers' Benefit Fund. *Id.* ¶¶ 1, 6.

¶ 53        In addressing the issue of sovereign immunity, we stated, "[s]overeign immunity cannot come into play here, however, for the State has expressly elected to subject itself to the provisions of the [Workers' Compensation Act] [citation], thus waiving its immunity with regard to workers' compensation matters." *Id.* ¶ 32; see *id.* ¶ 34. The legislature specifically included the "State of Illinois" in defining the term "employer" in the Workers' Compensation Act, thus subjecting the State to the statute's requirements except when specifically excluded. *Id.* ¶ 32 (citing 820 ILCS 305/1(a)(1), (2) (West 2012)). Having determined that the legislature explicitly subjected the State to the terms of the statute, we then stated, "where the legislature wishes to excuse the State or other governmental entities from filing and other fees imposed by the circuit court in connection with litigation, it knows how to do so and has done so expressly." *Id.* ¶ 35. Plaintiffs cite this quote in their brief, but we made this statement only in the context of the provisions of the Workers' Compensation Act and only after the *Illinois State Treasurer* court had established

that the legislature expressly waived sovereign immunity by expressly subjecting the State to the provisions of the Workers' Compensation Act. *Id.*

¶ 54   Here, the Confidentiality Act does not include a similarly explicit manifestation of the legislature's intent to waive sovereign immunity. Therefore, our statement in *Illinois State Treasurer*, cited and quoted by plaintiffs, does not support a circuit court's exercise of subject-matter jurisdiction to award attorney fees and costs in this case based on an argument that the legislature has not *excluded* the State from awards of attorney fees and costs in the Confidentiality Act. We cannot assume the existence of a sovereign immunity waiver in any statute when there is no waiver expressly stated.

¶ 55           F. The Appellate Court Usurped the Legislature's Exclusive
              Authority Over Sovereign Immunity by Expanding the
              Prospective Injunctive Relief Exception to Include
              Subject-Matter Jurisdiction to Enter a Monetary
              Judgment Against the State for Attorney Fees and Costs

¶ 56   Despite no explicit statutory authorization from the legislature, the appellate court, nonetheless, asserted subject-matter jurisdiction to enter the monetary judgment against the Department for attorney fees and costs by expanding the application of the prospective injunctive relief exception without regard to explicit legislative consent. The appellate court erred in doing so.

¶ 57   As we explained, cases that fall under the purview of the prospective injunctive relief exception are not considered to be claims against the State. *Walker*, 2025 IL 130288, ¶ 22. However, the rationale for this exception does not extend to other requests for relief in the same lawsuit that are not prospective injunctive relief but are requests for relief that have the potential to impact the property of the State.

¶ 58   When plaintiffs request relief in the circuit court in addition to prospective injunctive relief and that additional relief impacts the State's property, the State then becomes directly and adversely affected by the additional claim for relief, and it cannot be said that the State is not a party to this additional claim. That portion of the lawsuit is against the State, including any request for attorney fees and costs payable by State funds. See *Sass v. Kramer*, 72 Ill. 2d 485, 491 (1978) (" 'Since the

property of the State is involved, the State is directly and adversely affected by the suit' and the action must be held to be one against the State." (quoting *Posinski v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 376 Ill. 346, 351-52 (1941))); *Hollander & Hollander v. Kamenjarin*, 201 Ill. App. 3d 799, 801 (1990).

¶ 59 Therefore, in the present case, the prospective injunctive relief exception did not expand the circuit court's subject-matter jurisdiction to enter that portion of the judgment awarding attorney fees and costs. The appellate court improperly expanded the scope of the prospective injunctive relief exception to encompass a claim against the State to be paid by State funds.

¶ 60 In addition to being a claim against the State, plaintiffs' request for attorney fees and costs is also not a forward-looking claim for relief but is a request for a monetary remedy to compensate plaintiffs for something that had already occurred at the time the request was made, *i.e.*, attorney fees and expenses incurred prior to the circuit court's judgment. Therefore, an award of attorney fees and costs does not fit within the definition of *prospective* injunctive relief, which the appellate court in *Shempf v. Chaviano*, 2019 IL App (1st) 173146, ¶ 54, correctly noted is "a different matter altogether." Once a plaintiff seeks to tap State funds by seeking attorney fees and costs, that portion of the plaintiff's request for relief is no longer purely against the rogue officer's conduct but seeks a monetary judgment payable by the State itself.

¶ 61 In *Shempf*, the appellate court correctly held that, despite the presence of a general cost-shifting provision in section 10-55(c) of the Administrative Procedure Act (5 ILCS 100/10-55(c) (West 2016)), the circuit court lacked subject-matter jurisdiction to award costs against the State as part of the injunctive relief awarded in that case. *Schempf*, 2019 IL App (1st) 173146, ¶¶ 62-63. The *Shempf* court, citing this court's precedent, correctly noted that "[s]tatutes that generally allow for fees or costs to prevailing parties, but do not expressly refer to the State, do not waive sovereign immunity." *Id.* ¶ 65 (citing *Walker*, 131 Ill. 2d at 304).

¶ 62 In *City of Springfield*, 82 Ill. 2d at 578-79, this court held that interest statutes were similar to statutes imposing costs and that the court's *equitable powers* do not authorize a court to award interest against the State in the absence of statutory authority, when doing so has the net effect of entering a money judgment against the State. The same is true with respect to the prospective injunctive relief exception

- 19 -

to sovereign immunity; it does not authorize a monetary judgment against the State for attorney fees and costs in the absence of explicit statutory authority. The fact that these proceedings were filed in the circuit court with the primary claim arguably falling within the purview of the prospective injunctive relief exception to sovereign immunity did not authorize the circuit court to award attorney fees and costs against the State in the absence of statutory authority, when doing so has the net effect of entering a money judgment against the State. *Id.* at 579. By compelling the Department to pay attorney fees and costs, the appellate court went beyond mere prospective injunctive relief to prevent the Department from obtaining a copy of Lavery's personal notes in the administrative proceeding.

¶ 63        In support of the circuit court's exercise of subject-matter jurisdiction over the attorney fees and costs award, the appellate court below relied heavily on *Grey v. Hasbrouck*, 2015 IL App (1st) 130267. The appellate court erred in relying on *Grey*. *Grey* concerned section 5 of the Illinois Civil Rights Act of 2003 (740 ILCS 23/5 (West 2010)), which, the *Grey* court concluded, included the legislature's express waiver of statutory sovereign immunity.[6] Grey, 2015 IL App (1st) 130267, ¶ 21. As we established above, the Confidentiality Act does not contain an express waiver of statutory sovereign immunity.

¶ 64        The *Grey* court further held, in *dicta*, that statutory attorney fees and costs could be awarded as part of injunctive relief sought under the prospective injunctive relief exception to sovereign immunity. *Id.* ¶¶ 22-28. The *Grey* court's analysis on this nonessential point is incorrect and not persuasive. The *Grey* court does not recognize this issue as one of statutory interpretation of the State Lawsuit Immunity Act and offers no consideration of the legislature's intent with respect to the State Lawsuit Immunity Act.

¶ 65        Furthermore, as the Department notes, the *Grey* court's reliance on *Wilson*, 2013 IL App (5th) 120337, ¶¶ 3, 17, was misplaced where the money involved in *Wilson* was money that the State was required to pay to carry out the permissible injunctive relief (disbursement of a legislatively appropriated stipend); it was not a

_____

[6]We take no position on whether the *Grey* court is correct that section 5 of the Illinois Civil Rights Act of 2003 includes an express waiver of sovereign immunity, as that issue is not before us and is not analyzed in this appeal.

separate monetary judgment against the State's coffers similar to the circuit court's award of attorney fees and costs in the present case.

¶ 66 Also, the appellate court relied on the reasoning of the *Grey* court's opinion, in part, because "[t]he ancillary award of fees is necessary to make it practicable for citizens to assert a claim to stop a state actor from illegal conduct." 2023 IL App (1st) 220990, ¶ 31. However, whether an award of fees and costs is beneficial for this purpose is a policy decision that is exclusively within the province of the legislature's constitutional power to define the parameters of statutory sovereign immunity. For these reasons, we reject the *Grey dicta*.

¶ 67 Whether the State *should* pay attorney fees and costs under the circumstances of this case is an issue that lies strictly within the legislature's discretion, and until the legislature explicitly authorizes an award of such fees and costs against the State, the circuit court lacks subject-matter jurisdiction to make that award. The legislature has thus far declined to waive sovereign immunity with explicit language in section 15 of the Confidentiality Act. If the legislature determines that public policy would benefit from subjecting the State to fees and costs under section 15 of the Confidentiality Act, it has the power to implement that policy by adding express language to the statute. Until that is done, circuit courts do not have subject-matter jurisdiction to award fees and costs no matter how beneficial the courts may believe such an award may be to the common good.

¶ 68 G. Federal Eleventh Amendment Jurisprudence Does Not
Support the Circuit Court's Subject-Matter Jurisdiction to
Award Attorney Fees and Costs Against the State

¶ 69 In support of the exercise of subject-matter jurisdiction to award attorney fees and costs in this case, the appellate court relied on cases discussing federal jurisprudence under the eleventh amendment of the United States Constitution (U.S. Const., amend. XI), particularly *Hutto v. Finney*, 437 U.S. 678 (1979). *Hutto* offers no guidance in evaluating statutory sovereign immunity in Illinois under the State Lawsuit Immunity Act.

¶ 70 In *Hutto*, a federal district court entered orders requiring Arkansas to remedy certain conditions in that state's penal system *Id.* at 681-82. Arkansas, however,

- 21 -

failed to make satisfactory progress toward improving conditions, and the state's failure to comply with the court's directive required multiple hearings for the court to enforce its decrees that ordered improvement of penal conditions. *Id.* at 682-85. The district court concluded that the state had acted in bad faith and awarded fees to be paid from Arkansas's Department of Correction funds. *Id.* at 684-85.

¶ 71    On appeal, Arkansas argued that the award of fees was prohibited by sovereign immunity embodied in the eleventh amendment, but the *Hutto* Court held the district court's award of fees was supported by its finding of bad faith. *Id.* at 689. The Court reasoned that state officers are not immune from prospective injunctive relief and that the cost of compliance with the court's order is " 'ancillary' " to the prospective order enforcing federal law. *Id.* at 690. The Court held that the attorney fees awarded in that case were part of the circuit court's "effective enforcement weapons" when a state agency refuses to comply with the court's order. *Id.* at 690-91. Accordingly, the Court reasoned that the "power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief" and "the award of attorney's fees for bad faith served the same purpose as a remedial fine imposed for civil contempt." *Id.* at 691.

¶ 72    Accordingly, most of the attorney fee award in *Hutto* was in the nature of a penalty for Arkansas's failure to comply with the court's orders. This portion of the fee award was not extra relief awarded to a plaintiff as part of the plaintiff's request for prospective injunctive relief. This analysis has no relevance to the attorney fee award in the present case.

¶ 73    The *Hutto* Court also allowed a portion of the attorney fee award in that case based on the provisions of the Civil Rights Attorney's Fees Awards Act of 1976, which allowed federal courts to award attorney fees to the prevailing party in suits under 42 U.S.C. § 1983 (1976) as part of the costs. *Hutto*, 437 U.S. at 693-94. For this portion of the analysis, the *Hutto* Court concluded that Congress intended to exercise its power to set aside the states' sovereign immunity when it passed this legislation. *Id.* The Court also referred to the federal statute's legislative history in reaching this conclusion. *Id.* at 694. In addition, the *Hutto* Court noted a tradition in federal jurisprudence in awarding attorney fees as part of costs against states without regard to the states' eleventh amendment immunity, a practice that "goes back to 1849." *Id.* at 694-95. In contrast to Illinois's prior constitutional and current

statutory sovereign immunity, the United States Supreme Court "has never viewed the Eleventh Amendment as barring [awards of attorney fees as part of costs], even in suits between States and individual litigants." *Id.* at 695.

¶ 74    The *Hutto* Court's analysis with respect to the Civil Rights Attorney's Fees Awards Act of 1976 has no bearing on the issue of the circuit court's subject-matter jurisdiction under the State Lawsuit Immunity Act where, as we explained above, Illinois's sovereign immunity jurisprudence does not include the same history as federal jurisprudence with respect to attorney fee awards because, under federal jurisprudence, attorney fees have traditionally been awarded without regard for the states' eleventh amendment immunity. See *id.* In contrast, as we have explained, Illinois's jurisprudence excludes awards for attorney fees and costs under sovereign immunity principles unless our legislature explicitly waives sovereign immunity.

¶ 75    Moreover, the Court recently called into question its analysis in *Hutto* concerning sovereign immunity. In *Department of Agriculture Rural Development Rural Housing Service v. Kirtz*, 601 U.S. 42, 55-56 (2024), the Court noted that its approach to sovereign immunity when *Hutto* was decided "looked considerably different than it does today" where *Hutto* was decided during a period where the Court "was content to do away with sovereign immunity without clear authorization from Congress." *Hutto* has no relevance in evaluating the issue of Illinois's statutory sovereign immunity pursuant to the State Lawsuit Immunity Act.

¶ 76    In the present case, the appellate court also cited *Missouri v. Jenkins*, 491 U.S. 274, 278 (1989), but *Jenkins* (and the appellate court in this case) relied heavily on and quoted extensively from the *Hutto* Court's analysis. 2023 IL App (1st) 220990, ¶ 33 (citing *Jenkins*, 491 U.S. at 278 (discussing *Hutto*)). *Jenkins*, therefore, is not relevant to our analysis for the same reasons that *Hutto* lacks relevancy in evaluating Illinois's statutory sovereign immunity in the present case. We agree with the State that the appellate court's "shoehorning of federal doctrine on the Eleventh Amendment into Illinois's framework for state claims" confuses Illinois law, which requires express statutory language waiving sovereign immunity before the circuit court can enter a monetary judgment against the State for attorney fees and costs.

¶ 77    For these reasons, we conclude that the appellate court lacked subject-matter jurisdiction to enter a judgment for attorney fees and costs against the Department

under section 15 of the Confidentiality Act. Accordingly, we are obligated to reverse that portion of the circuit court's judgment. Having determined that the legislature has not waived sovereign immunity with respect to attorney fees and costs awards authorized in section 15 of the Confidentiality Act and that the prospective injunctive relief exception to sovereign immunity does not grant the circuit court subject-matter jurisdiction to enter such awards absent the legislature's authorization, we need not address the Department's alternative arguments (1) that the prospective injunctive relief exception does not apply in this case because plaintiffs' complaint failed to identify any individual State officer who would act outside legal boundaries and (2) that plaintiffs could not rely on the prospective injunctive relief exception because they failed to allege that the Department actually violated the Confidentiality Act.

¶ 78                                    III. CONCLUSION

¶ 79        The Illinois Constitution of 1970 makes it clear that our legislature has exclusive power in determining the circumstances in which the State can be subject to a monetary judgment, and the legislature has done so by enacting the State Lawsuit Immunity Act. Absent an express statutory waiver of sovereign immunity in the statute authorizing awards for attorney fees and/or costs, the circuit court lacks subject-matter jurisdiction to enter a judgment against the State for attorney fees and/or costs. The legislature has not waived sovereign immunity with explicit language in the Confidentiality Act, and therefore, the circuit court lacked subject-matter jurisdiction to enter a monetary judgment against the Department for plaintiffs' attorney fees and costs.

¶ 80        Appellate court judgment reversed.

¶ 81        Circuit court judgment reversed in part.