**2026 IL 132016**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 132016)

LISA JOHNSON *et al.*, Appellants, v. AMAZON.COM SERVICES, LLC, Appellee.

*Opinion filed March 19, 2026.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Tailor took no part in the decision.

**OPINION**

¶ 1      The United States Court of Appeals for the Seventh Circuit has certified for instruction from this court the following question of Illinois law: Does section 4a of Illinois's Minimum Wage Law (Wage Law) (820 ILCS 105/4a (West 2020)) incorporate the exclusion from compensation for employee activities that are preliminary or postliminary to their principal activities, as provided under the

federal Portal-to-Portal Act of 1947 (PPA) (29 U.S.C. § 254(a)(2) (2018))? *Johnson v. Amazon.com Services, LLC*, 142 F.4th 932, 944 (7th Cir. 2025). For the reasons that follow, we answer the question in the negative.

¶ 2                                                    BACKGROUND

¶ 3        We take the facts underlying the certified question as the Seventh Circuit has stated them in its certification ruling. *Id.*; see, *e.g.*, *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 3. Plaintiffs are former employees of Amazon.com Services LLC (Amazon), which owns and operates large distribution warehouses across the country, where it fulfills orders made on Amazon.com. These warehouses operate 24 hours a day and employ more than 20,000 workers in Illinois. Plaintiffs worked in Amazon's warehouses in Illinois as hourly employees, and their duties consisted primarily of moving, stacking, and loading packages.

¶ 4        In March 2020, in response to the COVID-19 pandemic, Amazon required all hourly, nonexempt employees to undergo medical "screenings" prior to clocking in for their shift. Employees formed a line at the entrance to the facility and underwent a brief examination, which included temperature checks and symptom screening questions. If the employees passed the examination, they were given masks and permitted to clock in for their shifts. Plaintiffs allege that these uncompensated preshift COVID-19 screenings took 10 to 15 minutes on average, and sometimes longer, occasionally requiring an employee to clock in after her scheduled start time.

¶ 5        Plaintiffs filed a class-action complaint in the circuit court of Cook County, alleging Amazon violated federal and Illinois wage laws by failing to pay them and other warehouse employees for time spent in these mandatory screenings. Plaintiffs argued their time undergoing these screenings is compensable because employees were required to be on the premises, the screenings were necessary to their work, and the screenings were primarily undertaken for the benefit of Amazon and its customers to keep its fulfillment centers operational. Plaintiffs argued that, by sustaining a safe workplace, Amazon was able to comply with the law and continue its operations during the pandemic.

¶ 6    Plaintiffs' complaint included a federal cause of action pursuant to the overtime provision of the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 207(a)(1) (2018)), as well as a state law claim for overtime compensation as required by section 4a of the Wage Law. 820 ILCS 105/4a (West 2020). Amazon removed plaintiffs' action to the District Court for the Northern District of Illinois pursuant to the Class Action Fairness Act of 2005. 28 U.S.C. §§ 1332(d), 1453(b) (2018). Amazon then filed a motion to dismiss the complaint, which the district court granted. It held the FLSA claims were barred by the federal PPA (29 U.S.C. § 254(a)(2) (2018)), which amended the FLSA to exclude, *inter alia*, certain preshift activities from compensable time.

¶ 7    With regard to the Wage Law claim, the district court summarily concluded that they necessarily failed with the FLSA claims. *Johnson v. Amazon.com Servs., LLC*, No. 23 C 685, 2023 WL 8475658, at *3 (N.D. Ill. Dec. 7, 2023). The district court noted that state and federal courts frequently look to case authority interpreting and applying the FLSA for guidance in interpreting the Wage Law. *Id.* In addition, it recognized that a number of district courts, as well as the Seventh Circuit Court of Appeals on one occasion, had previously applied the PPA's exclusions to Wage Law claims. See *id.* (collecting district court cases applying the PPA to Wage Law overtime claims); *Chagoya v. City of Chicago*, 992 F.3d 607, 617 n.22 (7th Cir. 2021) (assuming, based on the parties' agreement, that the PPA applied to plaintiffs' Wage Law claims).

¶ 8    Plaintiffs appealed to the Seventh Circuit, challenging only the dismissal of their Wage Law claims. *Johnson*, 142 F.4th at 937. Noting the lack of Illinois authority on the issue of whether the Wage Law is subject to the exclusions set forth in the PPA, plaintiffs requested that the Seventh Circuit certify the issue to this court. *Id.* Alternatively, they asked the Seventh Circuit to reach the merits of this statutory interpretation question and hold that the Wage Law does not include the PPA's exclusions. *Id.* Amazon argued that certification is unnecessary because existing federal and state authority support the district court's conclusion that the PPA exclusions apply to the Wage Law claim. *Id.*

¶ 9    In its order certifying the issue of whether the Wage Law is subject to the PPA's exclusions for preliminary and postliminary activities, the Seventh Circuit set forth a detailed analysis of the history of the FLSA, PPA, and Wage Law. *Id.* at 937-39.

It then examined the plain language of the Wage Law and relevant administrative regulations promulgated by the Illinois Department of Labor (IDOL), as well as federal case law analyzing overtime claims, both under the FLSA and the Wage Law. *Id.* at 939-43. In so doing, it concluded that the text of the Wage Law and associated IDOL regulations support plaintiffs' argument that the General Assembly did not incorporate the PPA's preliminary and postliminary activities exclusion into the Wage Law but that federal case law applying the Wage Law in tandem with the FLSA supported Amazon's position that the exclusion applied. *Id.* Because it was uncertain as to how this court would resolve the issue, the Seventh Circuit certified the question to this court (*id.* at 944), and this court accepted the certification pursuant to Rule 20 (Ill. S. Ct. R. 20 (eff. Aug. 1, 1992)). IDOL and the Illinois Attorney General filed a joint *amicus* brief in support of plaintiffs' position that the Wage Law does not incorporate the exclusion. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). The National Retail Federation, the Chamber of Commerce of the United States of America, the National Association of Manufacturers, the National Federation of Independent Business, Inc., the Illinois Manufacturers' Association, the Illinois Retail Merchants Association, and the Illinois Chamber of Commerce filed a joint *amicus* brief in support of Amazon's position that the exclusion applies to plaintiffs' Wage Law claims. See *id.*

¶ 10                                    ANALYSIS

¶ 11        The certified question asks this court to determine whether section 4a of the Wage Law (820 ILCS 105/4a (West 2020)) incorporates the exclusion from compensation for employee activities that are preliminary or postliminary to their principal activities, as provided under the PPA. 29 U.S.C. § 254(a)(2) (2018). This is an issue of statutory interpretation, governed by well-established legal principles, as we recently discussed in *Lavery v. Department of Financial & Professional Regulation*, 2025 IL 130033, ¶ 22. Our goal in interpreting the statute is to ascertain the intent of the General Assembly at the time of enactment, and we look to the plain and ordinary meaning of the statutory language itself as the paramount indicator of that intent. *Id.* In so doing, we must refrain from departing from the statute's plain language by reading into it exceptions, limitations, or conditions that conflict with the express language of the statute. *Id.*

¶ 12    The Wage Law, effective in 1971 (see Pub. Act 77-1451 (eff. Sept. 6, 1971)), was enacted with the following stated purposes: (1) to establish a minimum wage standard for workers at a level consistent with their health, efficiency, and general well-being; (2) to safeguard the minimum wage against unfair competition of wage and hour standards that do not provide adequate standards of living; and (3) to sustain purchasing power and increase employment opportunities. 820 ILCS 105/2 (West 2020). In 1976, the General Assembly added section 4a to the Wage Law to provide a right of overtime compensation for Illinois employees. See Pub. Act 79-1436, § 1 (eff. Aug. 22, 1976) (adding 820 ILCS 105/4a). In subsequent years, section 4a was amended on several occasions to delineate specific exceptions to the general right to overtime compensation provided in section 4a(1) (820 ILCS 105/4a(1) (West 2020)). See *id.* § 4a(2).

¶ 13    Subsection (1) of section 4a of the Wage Law provides as follows:

"(1) Except as otherwise provided in this Section, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed." *Id.* § 4a(1).

¶ 14    Subsection (2) then sets forth a list of 10 exceptions to which the overtime pay requirement in subsection (1) does not apply. *Id.* § 4a(2). Notably, four of these exceptions incorporate by reference specific provisions of the FLSA, regulations of the United States Department of Labor (USDOL), or both in describing the exception. See *id.* § 4a(2)(D), (E), (F), (J). However, there is no mention or reference to the PPA or to preliminary or postliminary activities in section 4a or anywhere else in the Wage Law.

¶ 15    The Wage Law mandates, in section 10, that the Director of Labor (Director) "shall make and revise administrative regulations, including definitions of terms, as [the Director] deems appropriate to carry out the purposes of [the Wage Law]." *Id.* § 10(a). In accordance with the mandate of that section, IDOL promulgated section 210.110 of the Illinois Administrative Code, which defines several terms for the purposes of implementation of the Wage Law. See 56 Ill. Adm. Code 210.110 (eff. Nov. 15, 1996). Relevant here, IDOL defines " 'Hours worked' " as "all the time an employee is required to be on duty, or on the employer's premises,

or at other prescribed places of work, and any additional time the employee is required or permitted to work for the employer." *Id.*

¶ 16     Notably, IDOL references specific provisions of the FLSA and regulations promulgated by USDOL thereunder in defining some terms, as well as in specifying how "hours worked" is calculated during periods of travel. See *id.* In fact, IDOL specifically references PPA regulations governing the compensability of travel time in determining "hours worked." See *id.* ("An employee's travel, performed for the employer's benefit *** is compensable work time as defined in 29 C.F.R. 785.33 — 785.41 ***."). However, there is no reference to the PPA or USDOL regulations that establish a preliminary or postliminary activities exclusion from "hours worked." To the contrary, IDOL defines "hours worked" to include all time an employee is *required* to be on the employer's premises, which contradicts the potential applicability of any such exclusion.

¶ 17     While section 210.120 of IDOL's regulations (56 Ill. Adm. Code 210.120 (adopted May 2, 1995)) allows the Director to refer to USDOL's regulations and interpretations in administering the FLSA "[f]or guidance" in the interpretation of the Wage Law and the regulations IDOL has promulgated thereunder, nothing in that section or any other provision requires IDOL to adopt USDOL's regulations and interpretations of the FLSA. Furthermore, there is no language in the Wage Law that permits any provision of the FLSA or USDOL's regulations to override the definitions that IDOL has promulgated in accordance with the General Assembly's mandate. See 820 ILCS 105/10 (West 2020).

¶ 18     In short, a plain reading of section 4a of the Wage Law, as well as the regulations promulgated by IDOL per the mandate of section 10 of the Wage Law, reveals that the General Assembly did not signify any intention to incorporate the preliminary and postliminary activities exclusions set forth in the PPA. Rather, the General Assembly delegated the authority to define "hours worked" to IDOL. In turn IDOL adopted a definition of "hours worked" that necessarily includes preliminary and postliminary activities, explicitly encompassing all time that an employee is *required* to be on an employer's premises.

¶ 19     Amazon argues that, because the general overtime provision in section 4a(1) of the Wage Law (*id.* § 4a(1)) is patterned after the general overtime provision found in section 207(a)(1) of the FLSA (29 U.S.C. § 207(a)(1) (2018)) and because

Illinois courts regularly look to the FLSA for guidance when interpreting the Wage Law, this court should interpret section 4a of the Wage Law coextensively with section 207(a)(1) of the FLSA, despite the dramatic departures in the subsequent text of these provisions, which set forth exclusions as described above. This court may not do as Amazon urges because "[i]t is the dominion of the legislature to enact laws and the courts to construe them, and we can neither restrict nor enlarge the meaning of an unambiguous statute." *Prazen v. Shoop*, 2013 IL 115035, ¶ 38.

¶ 20        Where provisions of the Wage Law are parallel to the FLSA, this court recognizes that federal authority interpreting the parallel provision can be persuasive in interpreting the Wage Law. See *Mercado v. S&C Electric Co.*, 2025 IL 129526, ¶ 33. Here, however, while section 4a of the Wage Law contains the same general overtime provision of the FLSA, it does not include the preliminary and postliminary activity exclusion that is set forth in the FLSA by the PPA. As such, these provisions are not parallel but rather state the same general rule with marked differences in their respective statements of exceptions. In this situation, to accept Amazon's invitation would be to read exceptions into the statute that depart from its plain language, in violation of our well-established rules of statutory interpretation, which explicitly prohibit this. See *Lavery*, 2025 IL 130033, ¶ 22.

¶ 21        Having found that the plain and ordinary language of section 4a of the Wage Law does not include an exception for preliminary and postliminary activities as set forth in the PPA, Amazon's citation of legislative history in support of its suggested interpretation necessarily fails, as does its argument that the patterning of the general overtime provision language after the FLSA indicates incorporation of federal regulations interpreting the FLSA to define "workweek." We may only look to other interpretive aids, such as legislative history, when the statutory language is ambiguous. *People v. Grayer*, 2023 IL 128871, ¶ 20. Pursuant to the rulemaking authority given to IDOL by the General Assembly, IDOL has defined "hours worked" to include all time an employee is *mandated* to be on the premises. 56 Ill. Adm. Code 210.110 (eff. Nov. 15, 1996). Thus, irrespective of federal law interpreting the term "workweek," this court cannot conclude that the Wage Law incorporates the PPA exclusions for preliminary and postliminary activities.

## CONCLUSION

For the foregoing reasons, we answer the certified question "Does the Illinois Minimum Wage Law, 820 ILCS 105/4a, incorporate the exclusion from compensation for employee activities that are preliminary or postliminary to their principal activities, as provided under the Federal Portal-to-Portal Act (29 U.S.C. § 254(a)(2)?" in the negative. See *Johnson Services, LLC*, 142 F.4th at 944.

Certified question answered.

JUSTICE TAILOR took no part in the consideration or decision of this case.